Mark J. Eberle (ME7277)
AUGUSTINE & EBERLE LLP
90 Broad Street, 25th Floor
New York, New York 10004
(212) 233-4185 (tel)
(212) 792-6580 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HOUSE OF DIAMONDS, INC.,

               Plaintiff,                     Civil Case No.: 08-CV-6760 (RJS)
                                            ECF Case

         v.

BORGIONI LLC, LIVADA DIAMOND CORP., J.
CHARLES AND COMPANY, INC. d/b/a J.          **COMPLAINT**
CHARLES CUSTOM JEWELERS, JOSEPH
ZRELAK, RHONDA A. BARTOLACCI,
TIFFANY A. BARTOLACCI, and JAN CHARLES
CHRISSAFIS,

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff HOUSE OF DIAMONDS, INC. (hereinafter "Plaintiff" or "House of

Diamonds"), by its attorneys, Augustine & Eberle LLP, as and for its Complaint for damages

against defendants BORGIONI LLC, LIVADA DIAMOND CORP., J. CHARLES AND

COMPANY, INC. d/b/a J. CHARLES CUSTOM JEWELERS, JOSEPH ZRELAK, RHONDA

A. BARTOLACCI, TIFFANY A. BARTOLACCI, JAN CHARLES CHRISSAFIS,

(collectively, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

      1.    This is an action to redress the harm that Defendants have caused to House

of Diamonds as a result of Defendants' failure and refusal to return certain diamonds and other

jewelry belonging to Plaintiff in the total sum of $156,985.50 and/or make payment of the value of the converted diamonds and jewelry.  Under the direction of the principals and officers of Borgioni LLC, Defendants obtained from Plaintiff the diamonds and other jewelry by consignment memoranda and breached their obligations under such memoranda and unlawfully converted and sold Plaintiff's diamonds to third parties.  Plaintiff seeks damages in the sum of $156,985.50 together with pre- and post-judgment interest and attorneys' fees and costs against Defendants for their wrongful acts.

**PARTIES**

**A.**    **Plaintiff**

2.    House of Diamonds was and still is a corporation organized and existing under the laws of the State of New York.

3.    House of Diamonds is a diamond manufacturer and dealer.  It maintains its principal place of business at 2 West 46th Street, Suite 1008, New York, New York 10036.

**B.**    **Defendants**

4.    Defendant Borgioni LLC ("Borgioni") was and still is a limited liability company organized and existing under the laws of the State of Florida.  Upon information and belief, Borgioni is a jewelry manufacturer and seller.  According to the Florida Department of State Division of Corporations (the "Florida DOS"), Borgioni maintains its principal place of business at 15603 Cochester Road, Tampa, Florida 33605, which is also the residence of Defendant Rhonda A. Bartolacci and, upon information and belief, the occasional residence of Defendant Joseph Zrelak.  According to the Florida DOS, Defendants Rhonda A. Bartolacci ("Rhonda") and Tiffany A. Bartolacci ("Tiffany") are the managing members of Borgioni.  Upon

information and belief, Defendant Joseph Zrelak ("Zrelak") is its president or other senior officer.

5.    Defendant Livada Diamond Corp. ("Livada") was and still is a corporation organized and existing under the laws of the State of Florida.    Upon information and belief, Livada is a diamond manufacturer and dealer that was recently created by Rhonda and Zrelak for the sale of loose diamonds.  According to the Florida DOS, Livada maintains its principal place of business at 2223 Grant Street, Tampa, Florida 33605, which is also the residence of Zrelak. According to the Florida DOS, Zrelak is the President of Livada and Rhonda is the Registered Agent at her home address of 15603 Cochester Road, Tampa, Florida 33647.

6.    J. Charles and Company, Inc. d/b/a J. Charles Custom Jewelers ("J. Charles") was and still is a corporation organized and existing under the laws of the State of Florida.  Upon information and belief, J. Charles is a diamond dealer which has served as a principal sales agent and representative of Borgioni and Livada for a number of years. According to the Florida DOS, J. Charles maintains its principal place of business at 3601 W. Swann Avenue, Suite 108, Tampa, Florida 33609.  According to the Florida DOS, Jan Charles Chrissafis ("Chrissafis") and Stefan Purnell are the principals of J. Charles.  J. Charles has designated A1A Registered Agent, Inc. located at 5647 110th Avenue North, Royal Palm Beach, Florida 33411 as its Registered Agent. Upon information and belief, Zrelak is one of its senior officers.

7.    Defendant Joseph Zrelak (or "Zrelak") was and still is an individual residing in the State of Florida, County of Hillsborough, at 2223 Grant Street, Tampa, Florida 33605. Upon information and belief, Zrelak also resides in the State of Florida, County of Hillsborough, at 15603 Cochester Road, Tampa, Florida 33647, which is Rhonda's residence.

Upon information and belief, Zrelak and Rhonda hold themselves out in public as "husband and wife" and are each intimately involved in the business affairs of Borgioni and Livada. As noted above, Zrelak is the president and principal of Livada and has claimed to be the President of Borgioni. Zrelak has also claimed to be an officer of J. Charles.

8.     Defendant Rhonda A. Bartolacci (or "Rhonda") was and still is an individual residing in the State of Florida, County of Hillsborough, at 15603 Cochester Road, Tampa, Florida 33647. Upon information and belief, Zrelak and Rhonda hold themselves out in public as "husband and wife" and are each intimately involved in the business affairs of Borgioni and Livada. As noted above, Rhonda is the Registered Agent of Livada and is a managing member of Borgioni.

9.     Defendant Tiffany A. Bartolacci (or "Tiffany") was and still is an individual residing in the State of California, County of Los Angeles, at 1325 Arizona Ave, Apartment No. 101, Santa Monica, California 90404. Upon information and belief, Tiffany is the daughter of Rhonda. As noted above, Rhonda and Tiffany are managing members of Borgioni.

10.     Defendant Jan Charles Chrissafis (or "Chrissafis") was and still is an individual residing in the State of Florida, County of Hillsborough, at 2522 West Kansas Avenue, Suite B, Tampa, Florida 33629. According to Zrelak's sworn statement to the Tampa Police Department, Chrissafis served as the primary sales representative for Borgioni from August 2007 through May 2008. According to the Florida DOS, Chrissafis and Stefan Purnell are the principals of J. Charles.

C.    **Individual Liability: Defendants' Tortious Actions and Piercing the Corporate Veil**

11.    As set forth more fully below, House of Diamonds seeks to hold the Defendants liable, individually and personally, jointly and severally, for the claims, causes of action and allegations set forth herein based upon the fraudulent conduct that each of them has directed and continues to direct against to House of Diamonds.  House of Diamonds also seeks to hold the Defendants individually liable under principles of agency and respondent superior, given their active involvement in and knowing oversight of the acts complained of herein.

12.    House of Diamonds further seeks to hold the Defendants individually and personally liable for the acts set forth herein that they have committed for and in the name of Borgioni, Livada, and J. Charles as well as under the principles of piercing the corporate veil. As more fully set forth below, the individual defendants have treated the corporate entities interchangeably and as their alter egos disregarding corporate formalities.

**JURISDICTION AND VENUE**

13.    This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C §1332.

14.    This Court has personal jurisdiction over Defendants.  Upon information and belief, and as demonstrated by a Tampa Police Department report, Defendants do continuous and systematic business in New York and this District and have contracted to obtain goods or services in New York in connection with the matters giving rise to this suit. *See* N.Y. C.P.L.R. 302(a)(1). Defendants have also committed wrongful acts outside of New York causing injury to Plaintiff in New York, and Defendants regularly do or solicit business in New York, and/or derive substantial revenue from goods sold or services rendered in New York, and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive

substantial revenue from interstate commerce. *See* N.Y. C.P.L.R. 302(a)(3). In addition, Plaintiff has its principal place of business in New York and in this District, and has been injured in New York by Defendants' wrongful acts.

15.    Venue is proper in this District pursuant to 28 U.S.C §1391(a)(2) because a substantial part of the conduct giving rise to the claims herein occurred within this District.

## FACTUAL BACKGROUND

**A.    The Beginning of the Relationship – Borgioni as "The Prime Client"**

16.    As noted above, Plaintiff is a diamond manufacturer and dealer. During June 2, 2007, together, Defendants Zrelak, Rhonda, Tiffany and Chrissafis approached Plaintiff's President, Sanjeev Jain ("Jain"), at the 2007 JCK Las Vegas Jewelry Show (a diamond and jewelry trade show) to obtain diamonds from House of Diamonds on consignment. When they introduced themselves, they held themselves out to Jain to be from the same company presenting a joint sales approach, expressed to Jain their extensive experience working together and described their extensive New York dealings, including their dealings with Plaintiff's New York competitors such as A-One Gems, which is located at 62 West 47th Street, Suite 903, New York, New York 10036, and Royal India USA, Inc., which is located at 10 West 46th Street, 7th Floor, New York, New York 10036 ("Royal India"). As part of their collective sales approach, Zrelak and Rhonda handed business cards to Jain with Zrelak's name on a J. Charles business card and Rhonda's name on a Borgioni business card. They presented the different entities as one and the same as Borgioni.

17.    In order to demonstrate their worldwide renown, Tiffany presented magazine covers to Jain showing that their clientele included celebrities and socialites such as

Lindsay Lohan, Tommy Lee, Cisco Adler, Heidi Klum, Steven Tyler, Ashlee Simpson and Kate Hudson.

18.    And, in order to demonstrate the close ties between them, Zrelak also alleged to Jain that Rhonda and Tiffany were his family (his "wife and daughter"), that he had been working with Chrissafis for 10 – 12 years and that Chrissafis was now Borgioni's primary sales representative.    Zrelak further claimed to be the President of Borgioni and presented himself as a senior officer of J. Charles.

19.    Together, Defendants Zrelak, Rhonda, Tiffany and Chrissafis requested of Jain that Plaintiff (and, Thai Gems, Inc., another entity owned by Jain) begin providing them with goods immediately.    Not knowing of Defendants, the entities or their collective ability to pay, Jain requested the names of references.    Defendants provided the names of two (2) references, including Mr. Vishal Kotahwala, the principal of Royal India, who was nearby at his own booth.    While Defendants Zrelak, Rhonda, Tiffany and Chrissafis waited together at Plaintiff's booth, Jain attended the booth of Royal India and spoke with Mr. Kotahwala who provided his reference.[1]    Like Jain, Mr. Kotahwala appeared to be of the opinion that Defendants represented one and the same entity.

20.    When Jain returned to the desk, he inquired of Zrelak, Rhonda, Tiffany and Chrissafis to whom the consignment memorandum should be issued.    Defendants made it clear that any future requests for goods that they may make to House of Diamonds (or any other entity owned by Jain) would be on behalf of or at the direction of Borgioni, even if the diamonds were to be sent to J. Charles and/or Livada.    Indeed, as the time of the initial meeting,

---

[1] During the 2008 JCK Las Vegas Show, which was from May 30, 2008 – June 3, 2008, Mr. Vishal Kotahwala, the principal of Royal India USA, Inc., disclosed to Jain that he sells over $100,000 per month of goods to Borgioni and that he continues to deal with Zrelak as its representative.

Defendants, in the presence of each other, collectively purchased diamonds with the consignment memorandum addressed to J. Charles and with Zrelak paying with his personal credit card.

21.     Subsequent to the initial meeting at the trade show, Zrelak, on Borgioni letterhead, began sending written requests for diamonds to Jain faxed from a telephone number 813-971-7335 marked with the name "RHONDA BARTOLACCI" on the identification line. This telephone number is publicly held out to be the facsimile number for Borgioni. Copies of example written requests dated July 10, 2007, and August 13, 2007, are annexed to this Complaint as **Exhibit A**.

22.     During the period of July 2007, through May 2008, House of Diamonds delivered the requested diamonds on consignment to Borgioni at Zrelak's official request to Borgioni, Livada and/or J. Charles and Defendants made either full or partial payment of each consignment memoranda by various methods, including credit card, check or wire transfer. Through the summer and early fall of 2007, Defendants made payments in full on each item delivered pursuant to a consignment memorandum. While payment would come from J. Charles, Livada or Zrelak, Plaintiff was instructed to indicate on its records that payment came from Borgioni irrespective of where the goods were delivered and Plaintiff was led to believe that Borgioni was ultimately responsible for all delivered goods. In fact, until Plaintiff's recent demands for payment, Borgioni never once indicated that it did not consider itself responsible for the diamonds delivered on consignment to any of the Defendants. As discussed below, Rhonda and Tiffany have only recently changed their position in order to fraudulently deny Borgioni's clear liability to Plaintiff.

23.     An example of Plaintiff's regular course of dealing with Borgioni, the interchangeability of the source of Defendants' payments, and Borgioni's continued

acknowledgment and acceptance of liability for goods delivered to J. Charles and/or Livada occurred as recently as May 2008. During late April 2008, Zrelak contacted Jain on behalf of Borgioni to request that House of Diamonds send a 5.44 carat round diamond to J. Charles in care of Livada. House of Diamonds prepared the proper consignment memorandum and shipped the goods to J. Charles, in care of Livada, on behalf of Borgioni. The value of the requested diamond was listed on the consignment memorandum as $32,096. Borgioni and J. Charles accepted the goods and agreed to be bound by the consignment memorandum for this transaction. Two (2) weeks later, on May 14, 2008, and in compliance with its obligations to make payment for diamonds shipped to J. Charles and/or Livada, Borgioni initiated a wire transfer from its business account for the sum of $32,096 payable to House of Diamonds as and for payment in full for the item under the consignment memorandum (that had been delivered by consignment memorandum to J. Charles). A copy of the consignment memorandum and the wire transfer advice demonstrating payment in full by Borgioni for an item shipped and accompanied by consignment memorandum to J. Charles are annexed to this Complaint as **Exhibit B.**

**B.    Plaintiff's Consistent Use of Consignment Memoranda**

24.    In each instance, as is customary in the industry, House of Diamonds delivered the goods to or on behalf of Borgioni (whether to Borgioni, Livada or J. Charles or any of the other Defendants) and Borgioni accepted the goods and agreed to and became bound by the terms of the accompanying consignment memoranda. The terms and conditions of the consignment to Borgioni are stated clearly on each consignment memorandum:

> "The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC.

at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether cause by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. No RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade." (Emphasis in original).

25.    Also, as is customary in the industry and pursuant to the terms of the accompanying consignment memoranda, each of the Defendant entities is jointly and severally liable for the value of the goods delivered or consigned to it. For example, upon Borgioni's acceptance of the goods and direction that goods should be delivered to Livada on consignment from Borgioni, Borgioni and Livada are deemed to be jointly and severally liable to House of Diamonds for the value of the goods. Similarly, by example, upon Borgioni's acceptance of the goods and direction that goods should be delivered to J. Charles on consignment from Borgioni, Borgioni and J. Charles are deemed to be jointly and severally liable to House of Diamonds for the value of the goods.

**C.**    **Defendants' Breach of Consignment Memoranda –**
**Failure to Return Goods or Make Payment**

26.    Prior to October 1, 2007, and further to Plaintiff's regular course of dealing with Borgioni, House of Diamonds delivered diamonds accompanied by consignment memoranda to or on behalf of Borgioni, including to Livada and J. Charles. All diamonds delivered to or on behalf of Borgioni prior to October 1, 2007, were either returned or paid for by the Defendants.

27.     However, after October 1, 2007, through April 10, 2008, not all diamonds were paid for or returned by the Defendants despite being accepted by or on behalf of Borgioni and accompanied by consignment memoranda.  Copies of the consignment memoranda (each a "Memo" and, collectively, the "Memos") representing the diamonds that House of Diamonds delivered to or on behalf of Borgioni during the period of October 1, 2007, through April 10, 2008, are annexed to this Complaint as **Exhibit C**.   The diamonds and the Memos that accompanied the diamonds during this time period are as follows:

28.     On October 1, 2007, House of Diamonds delivered to J. Charles, on behalf of Borgioni, two (2) diamonds valued in the total sum of $15,532.00 accompanied by Memo No. 3140, which were accepted by Borgioni and J. Charles rendering them bound to the terms of the Memo.  Defendants paid for one (1) of the diamonds which was valued at $7,680.00.  However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the other diamond on Memo No. 3140 – a round diamond, H-VS2, 1.51 carats, valued at $7,852.00.

29.     On December 5, 2007, House of Diamonds delivered to Borgioni five (5) diamonds valued in the total sum of $33,618.50 accompanied by Memo No. 3318, which were accepted by Borgioni rendering it bound to the terms of the Memo.   Defendants paid for four (4) of the diamonds which were valued at $20,878.50.  However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the remaining diamond on Memo No. 3318 – a round diamond, K-SI1, 2.80 carats, valued at $12,740.00.

30.     On December 12, 2007, House of Diamonds delivered to Borgioni three (3) diamonds valued in the total sum of $10,141.70 accompanied by Memo No. 3362, which were accepted by Borgioni rendering it bound to the terms of the Memo.  Defendants paid for two (2) of the diamonds which were valued at $4,667.70.  However, as of the date of this

11

Complaint, Defendants have not paid for or returned to Plaintiff the remaining diamond on Memo No. 3362 – a white round diamond (2 pieces), 2.38 carats, valued at $5,474.00.

31.    On December 19, 2007, House of Diamonds delivered to Livada, on behalf of Borgioni, at Borgioni's address, three (3) diamonds valued in the total sum of $39,102.00 accompanied by Memo No. 3383, which were accepted by Borgioni and Livada rendering them bound to the terms of the Memo. Defendants paid for two (2) of the diamonds which were valued at $30,102.00. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the remaining diamond on Memo No. 3383 – a round diamond, H-SI2, 2.00 carats, valued at $9,000.00.

32.    On January 30, 2008, House of Diamonds issued Memo No. 3476 to Livada, on behalf of Borgioni, and delivered to J. Charles, one (1) diamond valued in the sum of $18,540.00, which was accepted by Borgioni, Livada and J. Charles rendering them bound to the terms of the Memo. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the diamond on Memo No. 3476 – a round diamond, I-SI3, 4.12 carats valued at $18,540.00.

33.    On January 31, 2008, House of Diamonds delivered to Livada, on behalf of Borgioni, five (5) diamonds valued in the total sum of $49,344.50 accompanied by Memo No. 3481, which were accepted by Borgioni and Livada rendering them bound to the terms of the Memo. Defendants returned one (1) of the diamonds which was valued at $22,348.00. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the remaining four (4) diamonds on Memo No. 3481 – a round diamond (two pieces), G-I1, 4.03 carats, valued at $12,090.00; a round diamond, I-SI2, 1.51 carats, valued at $5,134.00; a round

diamond, J-VS1, 1.50 carats, valued at $5,250.00; and round diamond (2 pieces), 2.01 carats, valued at $4,522.50.

34.    On February 26, 2008, House of Diamonds delivered to Livada, on behalf of Borgioni, two (2) diamonds valued in the total sum of $33,300.00 accompanied by Memo No. 3535, which were accepted by Borgioni and Livada rendering them bound to the terms of the Memo. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the two (2) diamonds on Memo No. 3535 – a pear diamond, J-SI1, 4.41 carats, valued at $20,727.00; and a round diamond, J-VVS2, 2.54 carats, valued at $12,573.00.

35.    On March 13, 2008, House of Diamonds delivered to Borgioni one (1) diamond valued in the sum of $19,440 accompanied by Memo No. 3561, which were accepted by Borgioni rendering it bound to the terms of the Memo. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the one (1) diamond on Memo No. 3561 – a round diamond, J-VS2, 3.60 carats, valued at $19,440.00.

36.    On April 10, 2008, House of Diamonds issued Memo No. 3628 to Livada, on behalf of Borgioni, and delivered to J. Charles, two (2) diamonds valued in the total sum of $23,643.00, which were accepted by Borgioni, Livada and J. Charles rendering them bound to the terms of the Memo. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the two (2) diamonds on Memo No. 3628 – round diamond (2 pieces), J-SI1, 4.18 carats, valued at $18,183.00; and diamond earrings (2 pieces), J-VS1, 2.10 carats, valued at $5,460.00.

37.    Defendants' failure and refusal to return the above-listed diamonds or make payment of the value of the diamonds constitutes a clear breach of the terms of the Memos that accompanied the diamonds.

13

**D.    Defendants' Conspire to Defraud Plaintiff By Hiding
Theft of Diamonds While Requesting More Diamonds**

38.    It is not unusual in the diamond industry for a consignee of diamonds to request that additional diamonds be sent before the diamonds from an earlier consignment are either returned or paid in full.  Thus, on its face, nothing appeared to be wrong with Plaintiff's dealings with Defendants for the months of October 2007 through April 2008.  The Defendants would pay for one (1) or more of the diamonds on a particular Memo and then request and accept additional diamonds, all the while informing Plaintiff that they were still working on selling the diamonds from the earlier consignments.

39.    In light of the representations made by Defendants at the trade show as to their long-term relationship and great success, the Defendants' continued representations to Jain that the earlier items would soon be sold, the fact that the Internet showed that Borgioni had and continues to have literally hundreds of thousands of dollars of goods for sale in trendy shops in Beverly Hills, California, and based upon Jain's additional knowledge that Borgioni was conducting regular business with many of Plaintiff's known competitors in the New York area, Plaintiff reasonably believed that nothing was amiss.  However, following events on or about May 16, 2008, Plaintiff learned that many of Defendants' representations were false and were specifically meant to defraud Plaintiff into first engaging in business with Defendants and then continuing to provide diamonds to Defendants for which they now fail and refuse to return or pay for.

40.    In or about May 16, 2008, Zrelak contacted Jain to inform him that Chrissafis had converted many of the diamonds that Plaintiff had delivered to Defendants over

the prior eight (8) months and had allegedly sold the diamonds to pawn shops and other discount

jewelry shops for a fraction of their market value.  Zrelak accompanied this disclosure of

Chrissafis's wrongdoing with a letter that he apparently prepared for Chrissafis and faxed to Jain

from Borgioni that stated that Chrissafis "take[s] full responsibility and admit[s] to the selling of

the [diamonds] consigned to [him] in good faith and by customary business procedures."  A copy

of the Chrissafis letter is attached to this Complaint as **Exhibit D**.[2]

       41.    During this initial call regarding Chrissafis's actions, Zrelak professed to

Jain that he was shocked by what Chrissafis had done and that it was only a recent turn of events,

*i.e.*, that there were no prior indications that Chrissafis was engaged in any wrongdoing.

However, Plaintiff has now learned from a Tampa Bay Police Department Report (No. GO 2008-

287396) (the "Police Report") filed by Zrelak against Chrissafis, a copy of which is attached to

this Complaint as **Exhibit E**, that this allegation to Jain was knowingly false and that, instead,

Defendants knew that Chrissafis and J. Charles were in serious financial difficulties, including

passing bad checks, since at least December 2007.  (*See* Exhibit E, p. 2).

       42.    Moreover, the Police Report revealed that Borgioni and Livada's alleged

close ties with Chrissafis were not, in fact, close.  Instead, they barely knew him as a business

partner.  As noted above, Zrelak had previously alleged to Jain a year earlier that he had been

working with Chrissafis for 10 – 12 years.  However, the Police Report, which includes a sworn

statement from Zrelak, indicates that Zrelak, who is a principal of Livada and an agent of

Borgioni, had never worked with Chrissafis prior to August 2007[3].  (*Id* at p. 2).

---

[2] Notably showing the interrelationship of the parties, the Chrissafis letter was faxed to
Plaintiff from 813-971-7335, which is Borgioni's fax number, and is marked with the name
"RHONDA BARTOLACCI" on the identification line.

[3] Inexplicably, it appears that Zrelak also provided false information in his sworn
statement to the Tampa Police Department regarding his working relationship with Chrissafis

43.     The Police Report further revealed additional lies by the Defendants that were meant to hide Chrissafis's theft of the diamonds while promoting Plaintiff's continued delivery of new goods.   Over the six (6) months prior to May 14, 2008, Defendants had continued to advise Plaintiff that Chrissafis and others were working diligently to sell Plaintiff's remaining diamonds that had not yet been sold (*i.e.,* the diamonds listed above at ¶¶28-36). However, in the Police Report, Zrelak provides a sworn statement that demonstrates that Chrissafis and others failed to do anything about the diamonds for at least six (6) months, including reporting to Plaintiff that the diamonds delivered to Chrissafis may be missing. Instead, according to the Police Report, Chrissafis would claim to Zrelak that he knew of potential buyers for the diamonds that never materialized despite the passing of many months.

44.     It is clear from the Police Report that for several months that Zrelak, a senior officer of Borgioni, Livada and J. Charles, did not believe Chrissafis's claims that he would soon present buyers for the diamonds.   (*Id* at pp. 3-4).   Thus, while Defendants knew of Chrissafis's false claims of buyers for many months, they intentionally never disclosed it to Plaintiff.   Instead, Defendants told Plaintiff that nothing was wrong and Plaintiff relied to its detriment upon Defendants' false representations and continued to send new goods.   Had any of the Defendants been truthful, Plaintiff would have ceased delivering diamonds to Defendants at least six (6) months ago, which would have decreased Plaintiff's damages dramatically.

E.     **The Police Report Provides a Clear Admission of Defendants' Liability**

45.     The Police Report provides evidence that Zrelak, individually and as a principal of Livada and an officer and agent of Borgioni, acknowledges responsibility for

---

since Zrelak, Rhonda, Tiffany *and Chrissafis*, collectively, bought diamonds for J. Charles from another entity owned by Jain on June 2, 2007, which Zrelak paid for with his credit card and, on that date, Zrelak presented Jain with a J. Charles business card.

Plaintiff's losses. (*Id* at pp. 3-4, 19-21). Indeed, in support of and as part of his complaint against Chrissafis, Zrelak attached the Plaintiff's Memos (Exhibit C, *supra*) together with other consignment memorandum from Defendants' other New York dealers, Royal India USA, Inc. and A-One Gems that demonstrate the interrelationship between Borgioni and Livada. (*See* Exhibit E at pp. 7-14).

46.     The Police Report also provides evidence that Chrissafis, individually and as a principal of J. Charles, acknowledges responsibility for Plaintiff's losses. (*Id* at pp. 5-6).

47.     The Police Report should be deemed to be an admission by Defendants of liability herein.

**F.     Plaintiff Demands Payment or Return of Good and
         Defendants Fail and Refuse to Pay or Return Goods**

48.     Following the initial May 14, 2008, disclosure of Chrissafis's conversion of Plaintiff's diamonds, House of Diamonds has made several verbal and written demands for return of the diamonds and/or payment in full of the amounts due and owing on each Memo; copies of demand letters are attached to this Complaint as **Exhibit F**. The demands for payment in full have been refused by some of the Defendants and entirely ignored by the others.

49.     Worse still, the principals of Borgioni, Rhonda and Tiffany, have wrongfully disclaimed *any* responsibility or liability for return of the diamonds and/or payment of the Memos despite all of the evidence of Borgioni's acceptance of the terms of each of the Memos. First, during a conversation with Jain in early June, Rhonda falsely denied any liability for the Memos and placed all liability on Zrelak, claiming that he did not have any authority to handle any transaction. Thereafter, Tiffany contacted Jain and made the false representation to Jain that "the law" does not require that Borgioni make payment of the Memos or return the

diamonds and also repeated Rhonda's false representation that Zrelak never had any authority to act on behalf of Borgioni.

50.    On June 17, 2008, Tiffany telephoned Jain and advised him that she was an attorney and that she had also spoken with an attorney and that they had concluded, according to "the law," that Borgioni was not liable for the diamonds or the Memos and that neither she nor her mother, Rhonda, should be "dragged into" this. She then alleged that Zrelak did not have any authority to act on behalf of Borgioni. This is clearly false. Zrelak has held himself out and continues to hold himself out as one of the principal officers for Borgioni to Plaintiff and other New York dealers, including A-One Gems and Royal India USA, Inc., in the presence of Tiffany and Rhonda. In fact, as recently as the 2008 JCK Las Vegas Show, which was from May 30, 2008 – June 3, 2008 (and, thus, after Plaintiff's demand for payment), Zrelak represented Borgioni at its display booth and together, Zrelak and Rhonda, approached Jain at Plaintiff's display booth, during the trade show, to discuss the outstanding Memos and the outstanding claim against Borgioni. During the entire trade show, Zrelak was wearing a Borgioni identification badge.

51.    Moreover, as noted above at ¶¶16-20, a year earlier Rhonda and Tiffany represented the complete opposite to Jain at the JCK Las Vegas Jewelry trade show by holding Zrelak and themselves out as a family that runs a family business and then, in each other's presence, and at the direction of Zrelak, the Defendants purchased diamonds from another entity owned by Jain. Furthermore, during October 2007, Zrelak ordered goods for Borgioni that were shipped to Tiffany in California at her home address paying for them with his personal check. Neither Tiffany nor Rhonda claimed at any prior time in the past year that Zrelak did not have authority to bind Borgioni to a consignment memorandum (and Zrelak has never denied such

authority). *See* **Exhibit G**. Only now, when faced with a demand for payment has this obviously false allegation arisen.

52.    Tiffany made the further disturbing representation to Jain that if Plaintiff were to move forward with a lawsuit against Borgioni, then Borgioni would file a "Chapter 11" bankruptcy proceeding to prevent Plaintiff from being paid. She then falsely claimed that Borgioni does not have any money to pay the claim. However, Borgioni's website indicates that Borgioni apparently has hundreds of thousands of dollars of goods on consignment with Hollywood boutiques and has a high profile clientele. When confronted with this by Jain, Tiffany backed down and said that she wouldn't file the Chapter 11 bankruptcy proceeding because she did not want to "ruin three generations' good name."

53.    The absurdity of Tiffany's allegation that Defendants cannot afford to pay the amount due under Memos is further brought to light by the fact that, only a few months ago, Zrelak, Rhonda and Tiffany approached Jain to purchase two (2) matching, 4.00 carats, fancy-yellow diamonds for Tiffany to wear to her wedding. Such stones would cost in or about $150,000.

54.    It is clear that Tiffany's threats and representations as to bankruptcy and Defendants' inability to pay were entirely false and meant to defraud Plaintiff from seeking payment from Borgioni.

55.    Perhaps the most disturbing part of the telephone call to Jain was that even though Tiffany knew that Plaintiff was represented by counsel, Tiffany sought to hold herself out as an attorney with the knowledge of the law advising Jain of Plaintiff's rights. Upon information and belief, Tiffany is not currently an admitted attorney, but instead, a graduate of Pepperdine Law School, who is seeking to become an actress or model. If she is indeed an

19

admitted attorney, Tiffany's communication to Plaintiff when she knows that Plaintiff is represented by counsel constitutes a violation by Tiffany of attorney ethical rules.

56.    Based upon the foregoing, including Rhonda and Tiffany's false representations and Defendants' six (6) month effort to hide the conversion of Plaintiff's diamonds, it is clear that Defendants will stop at nothing to avoid liability. They should be charged with the attorneys' fees and costs incurred by Plaintiff to bring this proceeding together with pre- and post-judgment interest.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### *- AS AGAINST ALL DEFENDANTS -*

57.    House of Diamonds repeats and re-alleges each and every allegation contained in paragraphs 1-56 above as if fully set forth herein.

58.    During the period of October 1, 2007, through April 10, 2008, House of Diamonds delivered diamonds to the Defendants accompanied by consignment memoranda. Upon acceptance of the diamonds, the Defendants agreed to and became bound by the terms of the accompanying consignment memoranda; true copies of each of consignment memoranda are attached to this Complaint as Exhibit C, *supra*, and incorporated herein.

59.    The terms and conditions of the consignment are stated clearly on each Memo as follows:

"The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether cause by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to

sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. No RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade." (Emphasis in original)

60.    On October 1, 2007, House of Diamonds delivered to J. Charles, on behalf of Borgioni, two (2) diamonds valued in the total sum of $15,532.00 accompanied by Memo No. 3140, which were accepted by Borgioni and J. Charles rendering them bound to the terms of the Memo. Defendants paid for one (1) of the diamonds which was valued at $7,680.00. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the other diamond on Memo No. 3140 – a round diamond, H-VS2, 1.51 carats, valued at $7,852.00.

61.    On December 5, 2007, House of Diamonds delivered to Borgioni five (5) diamonds valued in the total sum of $33,618.50 accompanied by Memo No. 3318, which were accepted by Borgioni rendering it bound to the terms of the Memo. Defendants paid for four (4) of the diamonds which were valued at $20,878.50. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the remaining diamond on Memo No. 3318 – a round diamond, K-SI1, 2.80 carats, valued at $12,740.00.

62.    On December 12, 2007, House of Diamonds delivered to Borgioni three (3) diamonds valued in the total sum of $10,141.70 accompanied by Memo No. 3362, which were accepted by Borgioni rendering it bound to the terms of the Memo. Defendants paid for two (2) of the diamonds which were valued at $4,667.70. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the remaining diamond on Memo No. 3362 – a white round diamond (2 pieces), 2.38 carats, valued at $5,474.00.

63.    On December 19, 2007, House of Diamonds delivered to Livada, on behalf of Borgioni, at Borgioni's address, three (3) diamonds valued in the total sum of

$39,102.00 accompanied by Memo No. 3383, which were accepted by Borgioni and Livada rendering them bound to the terms of the Memo. Defendants paid for two (2) of the diamonds which were valued at $30,102.00. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the remaining diamond on Memo No. 3383 – a round diamond, H-SI2, 2.00 carats, valued at $9,000.00.

64.    On January 30, 2008, House of Diamonds issued Memo No. 3476 to Livada, on behalf of Borgioni, and delivered to J. Charles, one (1) diamond valued in the sum of $18,540.00, which was accepted by Borgioni, Livada and J. Charles rendering them bound to the terms of the Memo. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the diamond on Memo No. 3476 – a round diamond, I-SI3, 4.12 carats valued at $18,540.00.

65.    On January 31, 2008, House of Diamonds delivered to Livada, on behalf of Borgioni, five (5) diamonds valued in the total sum of $49,344.50 accompanied by Memo No. 3481, which were accepted by Borgioni and Livada rendering them bound to the terms of the Memo. Defendants returned one (1) of the diamonds which was valued at $22,348.00. However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the remaining four (4) diamonds on Memo No. 3481 – a round diamond (two pieces), G-I1, 4.03 carats, valued at $12,090.00; a round diamond, I-SI2, 1.51 carats, valued at $5,134.00; a round diamond, J-VS1, 1.50 carats, valued at $5,250.00; and round diamond (2 pieces), 2.01 carats, valued at $4,522.50.

66.    On February 26, 2008, House of Diamonds issued Memo No. 3535 to Livada, on behalf of Borgioni, and delivered to J. Charles, two (2) diamonds valued in the total sum of $33,300.00, which were accepted by Borgioni, Livada and J. Charles rendering them

bound to the terms of the Memo.  However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the two (2) diamonds on Memo No. 3535 – a pear diamond, J-SI1, 4.41 carats, valued at $20,727.00; and a round diamond, J-VVS2, 2.54 carats, valued at $12,573.00.

67.    On March 13, 2008, House of Diamonds delivered to Borgioni one (1) diamond valued in the sum of $19,440 accompanied by Memo No. 3561, which were accepted by Borgioni rendering it bound to the terms of the Memo.  However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the one (1) diamond on Memo No. 3561 – a round diamond, J-VS2, 3.60 carats, valued at $19,440.00.

68.    On April 10, 2008, House of Diamonds issued a Memo No. 3628 to Livada, on behalf of Borgioni, and delivered to J. Charles, two (2) diamonds valued in the total sum of $23,643.00, which were accepted by Borgioni, Livada, and J. Charles rendering them bound to the terms of the Memo.  However, as of the date of this Complaint, Defendants have not paid for or returned to Plaintiff the two (2) diamonds on Memo No. 3628 – round diamond (2 pieces), J-SI1, 4.18 carats, valued at $18,183.00; and diamond earrings (2 pieces), J-VS1, 2.10 carats, valued at $5,460.00.

69.    House of Diamonds has made several verbal and written demands for return of the diamonds and/or payment in full of the amount due.  (*See* Exhibit F, *supra*).

70.    As of the date of this Complaint, the Defendants and persons and entities under their control have failed and refused to return the remaining diamonds or pay the sums due and owing for the diamonds as set forth on the Memos.  There remains a balance of $156,985.50, plus interest, due and owing from the Defendants for the above-referenced diamonds delivered in connection with the Memos.

71.    House of Diamonds performed all of its obligations to Defendants under the terms of the Memos.  However, Defendants have failed and refused to comply with their obligations and, thus, have breached their contractual obligations under the Memos.

72.    As a result of the foregoing breach of contract by the Defendants, House of Diamonds has been damaged in the amount of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest.

### SECOND CAUSE OF ACTION
### BREACH OF THE COVENANT OF GOOD FAITH
### *- AS AGAINST ALL DEFENDANTS -*

73.    House of Diamonds repeats and re-alleges each and every allegation contained in the paragraphs 1-72 above as if fully set forth herein.

74.    Defendants' acts as stated above constitute a breach of the implied covenant of good faith and fair dealing which exists in every contractual relationship.

75.    House of Diamonds has made several verbal and written demands for Defendants to comply with their contractual obligations.  (*See* Exhibit F, *supra*).

76.    As of the date of this Complaint, the Defendants and persons and entities under their control have failed and refused to return the remaining diamonds or pay the sums due and owing for the diamonds as set forth on the Memos.  There remains a balance of $156,985.50, plus interest, due and owing from the Defendants for the above-referenced diamonds delivered in connection with the Memos.

77.    House of Diamonds performed all of its obligations to Defendants under the terms of the Memos.  However, Defendants have failed and refused to comply with their obligations and, thus, have breached their obligations of good faith and fair dealing under the Memos.

24

78.     As a result of the foregoing breach of contract by the Defendants, House of Diamonds has been damaged in the amount of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest.

### THIRD CAUSE OF ACTION
### FRAUD
### *- AS AGAINST ALL DEFENDANTS -*

79.     House of Diamonds repeats and re-alleges each and every allegation contained in the paragraphs 1-78 above as if fully set forth herein.

80.     Defendants made false statements regarding the extent of their business relationship and knowledge of Chrissafis to induce Plaintiff to do business with them and further made false statements regarding their efforts to sell Plaintiff's diamonds to deceive Plaintiff into sending additional diamonds.  Defendants also made false statements regarding their ability to pay and the lack of authority of Zrelak to engage in business on behalf of Borgioni. These statements were materially false and were known to be false when made.

81.     Defendants made these false statements with the intention of defrauding House of Diamonds and with the intent of harming and/or destroying House of Diamonds and, thereby, perpetuating the conversion of its diamonds.

82.     Defendants have aided, abetted, encouraged, facilitated and conspired with each other to advance and commit these unlawful acts.

83.     As a result of the foregoing fraud by the Defendants, House of Diamonds has been damaged in the amount of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest.

## FOURTH CAUSE OF ACTION
## ACCOUNT STATED
### *- AS AGAINST ALL DEFENDANTS -*

84.    House of Diamonds repeats and re-alleges each and every allegation contained in the paragraphs 1-83 above as if fully set forth herein.

85.    During the period of October 1, 2007, through April 10, 2008, House of Diamonds delivered diamonds to the Defendants accompanied by the Memos.  Upon acceptance of the diamonds, the Defendants agreed to and became bound by the terms of the Memos.

86.    At no time from October 1, 2007, until Rhonda and Tiffany's false representations, did Defendants refute the amounts set forth on the Memos or otherwise object to invoices issued by the Plaintiff.    To the contrary, until Tiffany's false representations, Defendants have repeatedly promised to pay the full amount due, but have failed to do so.

87.    Accordingly, there exists an account stated between Plaintiff and Defendants of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest.

## FIFTH CAUSE OF ACTION
## CONVERSION
### *- AS AGAINST ALL DEFENDANTS -*

88.    House of Diamonds repeats and re-alleges each and every allegation contained in the paragraphs 1-87 above as if fully set forth herein.

89.    Defendants have failed and refused to return the remaining diamonds listed on the Memos.

90.    Defendants have aided, abetted, encouraged, facilitated and conspired with each other to advance and commit these unlawful acts.

91.     As a result of the Defendants unlawful conversion of the diamonds, House of Diamonds has been damaged in the amount of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest.

**WHEREFORE**, House of Diamonds respectfully demands judgment:

(a)     On the First Cause of Action in the sum of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest; and

(b)     On the Second Cause of Action in the sum of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest; and

(c)     On the Third Cause of Action in the sum of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest; and

(d)     On the Fourth Cause of Action in the sum of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest; and

(e)     On the Fifth Cause of Action in the sum of $156,985.50, plus attorney's fees and costs and pre- and post-judgment interest; and

(f)     For such further and separate other relief as the Court deems just and equitable.

Dated: New York, New York
       July 25, 2008

                                    AUGUSTINE & EBERLE LLP

                        By:    _____
                               Mark J. Eberle (ME7277)

                               90 Broad Street, 25th Floor
                               New York, New York 10004
                               (212) 233-4185 (tel)
                               (212) 792-6580 (fax)

                               Attorneys for Plaintiff
                               House of Diamonds, Inc.

**Exhibit A**



# MEMO

DATE: 07-10-07

**BORGIONI  LLC**
15603 Cochester Dr.
Tampa, FL  33647
Office:  813-977-9142
Fax: 813-971-7335

To:  Sanjeev Jain

**Please send me the following diamonds:**

1. 1.50 to 1.60 SI-1 clear white
2. 1 pair of 1 carat each SI-2 to SI-3 White
3. 2.0 to 2.10 round SI-1 clear white
4. 1.15 to 1.25 princess cut SI-1 to VS-2 white
5. 1.50 to 1.60 princess cut SI-1 to VS-2 white

If any problems, please call. Thank you.
Best Regards,
Joseph Zrelak
Cell: 813-244-5892

security

VISA                    4956        Exp:

BORGIONI                           U$ 247



# MEMO

**DATE: 08-13-07**

**BORGIONI  LLC**
**15603 Cochester Dr.**
**Tampa, FL  33647**
**Office: 813-977-9142**
**Fax: 813-971-7335**

To: Sanjeev Jain

Please send me the following diamonds:

1.  1.50 to 1.60 SI-1 G-H color
2.  1.25 to 1.30 SI –1 G-H color
3.  2.0 to 2.25 round SI-1 clear white
4.  Two .30 pt. round SI-1 G color
5.  1.50 to 1. princess  cut  VS-2 white


If any problems, please call. Thank you.
Best Regards,
Joseph Zrelak
Cell: 813-244-5892

→ Borlow ─ ( When she calls
→ Billing ─ ( Y/ard )
→ Bin ─ ( call Carlos )
→ Borgioni
→ Carlos ─ ( Residential
           Inj. 4500 – Ast
           15000 – Block

310 – 849 9050
813 – 849 9050

# Exhibit B

**HOUSE OF DIAMONDS, INC.**

2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9163
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

Member
**DDC**
Diamond
Dealers Club

~~CONSIGNED ON MEMORANDUM~~
MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

TO:  LiVADA   DiAmOND
     J. Charles  CoRP.  DATE: 05-06-08
     TO Kansas Ave.

PHONE: _____  FAX: _____

To the addressee:  The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand.  From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not.  Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not.  Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items.  NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2271 | Diamond - Round K-SI2 (EGL) | | | 5.44 | 5900 | | | | Total US $ |
| 2 | | | | | | | | | | 32,096.00 |
| 3 | | | | | | | | | | — Red T.9 |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER _____

**Bank of America**

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA      18507

HOUSE OF DIAMONDS INC
2 W 46TH ST STE 1008
NEW YORK NY   10036-4502

*Borgioni*

DATE: 05/14/08
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: ▮▮▮▮▮▮▮▮

THE FOLLOWING WIRE HAS CREDITED TODAY:

| | | |
|---|---|---|
| TRANSACTION REF: | 2008051400232560 | USD AMOUNT $32,096.00 |
| IMAD: | 20080514F1B7281C001548 | SERVICE REF: 001548 |
| ORIGINATOR: | BORGIONI LLC | |
| ORIGINATOR'S BANK: | NORTHSTAR BANK | ID: |
| SENDING BANK: | SILVERTON BANK, N. A. | ID: |
| BENEFICIARY: | HOUSE OF DIAMONDS INC | ID: |

Recycled Paper

**Exhibit C**

**MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK**

# HOUSE OF DIAMONDS, INC.

2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9163
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

Member DDC
Diamond Dealers Club

BORGIONI   DATE: 10/01/07

TO: C/o J. Charles and Company
2522 W Kansas Ave, Suk-B
Tampa, FL - 33629
PHONE: 813-244-5892   FAX:

To the addressee: The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2512 | Diamond - Round (H-VS2) | | 1 | 1·51 | 5200 | | | | Total US $ 7852.00 |
| 2 | 4273 | Diamond - Round (H-VS2) | | 1 | 1·60 | 4800 | Payment Rec'd | | 1·60 | 7680·00 |
| 3 | | | | | | | Total US $ | | | 15,532.00 |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER_____

3318

**SIGNED ON MEMORANDUM**
**MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK**

# HOUSE OF DIAMONDS, INC.

2 West 46ᵗʰ Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9163
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

Member
DDC
Diamond
Dealers Club

**DATE:** 12/5/07

**TO:** Borgioni

15603 Cochester Road.

**PHONE:** _____  **FAX:** _____

To the addressee: The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION Price PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4326 | Diamond - Round | 1/2 | 2 | 0.79 | 650 | | | 0.79 | Total US$ 513.50 Rec |
| 2 | 9299 | Diamond - Round | | 3 | 4.05 | 460 | 445 | | 4.05 | 1863.00 Rec |
| 3 | 9190 | Diamond - Round | | 2 | 0.98 | 1100 | | | 0.98 | 1078.00 Rec |
| 4 | 4261 | Diamond - Round (H-SI2) | | 1 | 3.52 | 4950 | | | 3.52 | 17,424.00 Rec |
| 5 | 4655 | Diamond - Round (K-SI1) | | 1 | 2.80 | 4550 | | | | 12,740.00 |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | Total US$ | | 33,618.50 |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER_____

3362

**SIGNED FOR ON MEMORANDUM**
**MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK**

# HOUSE OF DIAMONDS, INC.

2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9163
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

Member
DDC
Diamond
Dealers Club

DATE: 12-12-07

TO: BORGINI

PHONE:                    FAX:

To the addressee: The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains IN HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1800 | Treated Black Diamond | | 4 | 4.74 | 55 | | | 4.74 | 260.70 Rec |
| 2 | 4154 | White Diamond Ro | | 2 | 2.38 | 2300 | | | | 5474.00 |
| 3 | 4339 | White Diamond Princess | | 2 | 2.26 | 1950 | | | 2.26 | 4407.00 rpb |
| 4 | | | | | | | | Total US$ | | 10141.70 |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER



3383

SIGNED ON MEMORANDUM
**MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK**

# HOUSE OF DIAMONDS, INC.

DATE: 12-19-07.

TO: LINADA DIAMOND COP.

2 West 46ᵗʰ Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9153
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

Member
DDC
Diamond
Dealers Club

PHONE:                          FAX:

To the addressee: The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2169 | DIAMOND Ro. F-SI2 | | 1 | 4.04 | 5900 | | | 4.04 | 23836. Rec'd. |
| 2 | 4875 | -do- | H-SI2 | 1 | 2.00 | 4500 | | | | 9000. |
| 3 | 4879 | -do- | I-VS2 | 1 | 1.51 | 4150 | | | 1.51 | 6266. Rep |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | Total US$ | | 39102. |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER

HOD

3476

**SIGNED ON MEMORANDUM**
**MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK**

# HOUSE OF DIAMONDS, INC.

2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9163
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

Member
DDC
Diamond
Dealers Club

DATE: 01-30-08

TO: LIVADA DIAMOND Corp.

PHONE:                          FAX:

To the addressee: The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4676 | Diamond Rd. I-SI3 | | 1 | 4.12 | 4500 | | | | 18540. |
| 2 | | | | | | | | | | |
| 3 | | | | | | | Total USD | | | 18540. |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER

3481

**HOD**

**SIGNED FOR MEMORANDUM**

MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

# HOUSE OF DIAMONDS, INC.

2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9363
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

DATE: 1/31/08

TO: LIVADA DIAMOND Corp.
4/0 J Charles

Member
DDC
Diamond
Dealers Club

PHONE:                    FAX:

To the addressee: The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|--------|---------|-------------|------|------|-------------|-------------------|--------------------------|--------|------|---------|
| 1 | 4579 | Diamond Round G-I1 | | 2 | 4.03 | 3000 | | | | Total us $ 12,090.00 |
| 2 | 4678 | Diamond Round G-I1 | | 1 | 6.04 | 3700 | | | | 22,348.00 Ret |
| 3 | 4882 | Diamond Round I-SI2 | | 1 | 1.51 | 3400 | | | | 5,134.00 |
| 4 | 4868 | Diamond Round J-VS1 | | 1 | 1.50 | 3500 | | | | 5,250.00 |
| 5 | 4153 | Diamond Round | | 2 | 2.01 | 2250 | | | | 4,522.50 |
| 6 | | | | | | | | | Total us $ | 49,344.50 |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER _____

# SIGNED ON MEMORANDUM

## MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

# HOUSE OF DIAMONDS, INC.

2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9463
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

**IDCA**
Member
DDC
Diamond
Dealers Club

DATE: 02-26-08

TO: LIVADA DIAMOND Corp.

PHONE: _____    FAX: _____

To the addressee: The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4702 | DIAMOND PEAR | J-SI1 | 1 | 4.41 | 4700 | | | | 20727. |
| 2 | 4650 | DIAMOND ROUND | J-VV2 | 1 | 2.54 | 4950 | | | | 12573. |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | Total US$ 33300. | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER _____

3561

# HOUSE OF DIAMONDS, INC.

DATE: 03-13-08

TO: BORGINI

2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9163
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

Member
DDC
Diamond
Dealers Club

PHONE:                          FAX:

To the addressee: The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|--------|---------|-------------|------|------|-------------|-------------------|-------------------------|--------|------|---------|
| 1 | 4915 | DIAMOND Ro. J-VS2 | | 1 | 3.60 | 5400 | | | | 19440. |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER

3628

**SIGNED ON MEMORANDUM**
MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

# HOUSE OF DIAMONDS, INC.

2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9163
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

Member
DDC
Diamond
Dealers Club

DATE: 04-10-08

TO: LIVADA DIAMOND CORP.

PHONE: _____ FAX: _____

To the addressee: The property as listed is delivered to you at your own risk from all hazards and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. From the time the property is received by you until it is actually re-delivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of the amount stated below for any loss or damage which may occur, whether caused by you or not, and whether occurring through your negligence or not. Your acceptance of the property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. Title remains in HOUSE OF DIAMONDS, INC. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|--------|---------|-------------|------|------|-------------|-------------------|------------------------|--------|------|---------|
| 1 | 5064 | DIAMOND Ro | J-SI1 | 2 | 4.18 | 4350 | | | | 18183. |
| 2 | 1503 | DIAMOND Earring | J-VS1 | 2 | 2.10 | 2600 | | | | 5460. |
| 3 | | | | | | | | | | Total US$ 23643. |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER_____

# Exhibit D

**JOSEPH ZRELAK**
2223 Grant St.
Tampa, FL   33605
813-244-5892
E-mail: josephzrelak@hotmail.com.

Info
Jan Charles Chrissafis
149-421-140
2522B West Kansas Ave.
Tampa, Fl. 33629
FDL: C621-423-50-100-0
DOB, March 20, 1950

To Whom It May Concern:

I ___Jan Chrissafis___, take full responsibility and admit to the selling of the attached list of diamonds and jewelry consigned to me in good faith and by customary business procedures by the following parties listed below. Joseph Zrelak (Livada Dia Corp) Sanjeev (House Of Diamonds and Thia Gems Inc.) Sam (A-One Gems) Rhonda Bartolacci (Borgioni LLC ). Bobby Matthews and Bill Burke. In addition, I hereby state that under no circumstances was ever under duress at any time during the course of these dealings. The above parties were unaware to whom, and at what price the goods were sold, nor was permission ever given to me to undersell the goods at any time. The above parties are, and still remain independent parties to these transactions.

Sincerely

Jan Chrissafis

Antinori — 441 one @ 18000

① Gold + Diamond Center —  727-243-9440
Selt — 5000 - 14500 - 7800 -  727-247-9440
A Gm 3.0 —
3.0 — 7800
3.00 — 7800
7500

② Belize Coin    Chris

② 727-585-4502
4.0 ct TW    2.54
2.0 ct TW —    1.37
2 ct —    1.30
201    2:30
Bob's PS — 1500

4/2

Rolex G    727-787-1313

Watch Rhonda Bartolacci
(see for brand March)
midsize greatmarks    2800 —

Memento
Nations Bank

To the best of my
knowledge & belief these
5/9/08    · · whe

585 
Hot Hook

**Exhibit E**

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)        9500 - 81 INFORMATION-ECONOMIC CRIME INV

**General Offense Information**

Operational status : **ADMINISTRATIVE**
Reported on : **May-16-2008 (Fri.) 1841**
Occurred on : **Aug-01-2007 (Wed.) 0800**
Approved on : **May-20-2008 (Tue.)** by : **28401 - PALMIERI, MICHAEL T**
Report submitted by : **45618 - CLARK, DIANE L**
Org unit : **D1 CSO SQUAD**
 Down time : **77**
Location : **B - 2522 KANSAS AV W**
Municipality : **Tampa**
District : **1** Beat : **B7** Grid : **171**
Bias : **None (no bias)**
Family violence : **NO**

**Offenses (Completed/Attempted)**

Offense : #1  **9500 - 81 INFORMATION-ECONOMIC CRIME INV - COMPLETED**
Location : **Apartment/Condo**
Offender suspected of using : **Not Applicable**

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Sworn Statement Acknowledgment

page 1

**STATEMENT**          08-287396

I, _Joseph Zrebak_ _____ on the _16_ day of _May_,
20 _08_ A.D., at (time) _8:15 pm_ at Tampa, Hillsborough County, Florida, freely and voluntarily make the following statement. I have been advised that I have the constitutional right to remain absolutely silent, that I need not make any statement that may tend to incriminate me, and if I do that it may be used in a court of law against me. I have been advised that I have the right to a lawyer and the right to have the lawyer present before and during any questioning. I have also been told that if I cannot afford a lawyer, then one will be appointed without cost to represent me. No force has been used nor promises or threats made in obtaining this statement.

Starting in Aug of 2007 I started dealing in dias with a Ian Chiesolio whom I had met years before. At first it was small dias 1-2 ct. dias. He would retail the dias to people and pay me the agreed upon price. But he started asking for more dias. Still he would sell a dia here and there. But he was to build a bigger supply. He would say He had a client for this and that, and ask for more dias. Starting around the end of Dec. of 07 there was always some type of problem with the money. Check would be bad and the credit card machine was a 10 day wait. But he would tell me someone would what a different or big stone.

Signature _[signature]_          Print Name _Joseph Zrebak_

The foregoing instrument was sworn to (or affirmed) and subscribed before me this _16th_ day of _May_, 20 _08_, by _Lt Rt Plainer_ _____ who is personally known ___ or who has produced identification. Type of ID Produced: _____

Seal:

_[signature]_
Notary Public/Law Enforcement Officer Signature

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Sworn Statement Acknowledgment

---

**STATEMENT**

page 2
08-287396

I, Joseph Zrebiec _____ on the 16 day of May _____,
20 08 A.D., at (time) 9:15 p. at Tampa, Hillsborough County, Florida, freely and voluntarily make the following statement. I have been advised that I have the constitutional right to remain absolutely silent, that I need not make any statement that may tend to incriminate me, and if I do that it may be used in a court of law against me. I have been advised that I have the right to a lawyer and the right to have the lawyer present before and during any questioning. I have also been told that if I cannot afford a lawyer, then one will be appointed without cost to represent me. No force has been used nor promises or threats made in obtaining this statement.

In Jan. I gave him two lg. stones a
4 ct & 5.85 ctw stones. He said he had buyer
for both. Upon Upon asking for the stone
back He gave me a deposit of $5000 00
on each stone. So I sent the money
to my New York dealers. Everything was ok
with that, but there was always a problem
getting the rest of the money. He would
tell me story after story about the two
buyers But he also would what more stones
He would say he had some one - they would
what this or that but he would need more
stones Now I was telling him. I needed
to get paid for these stones that when
he told me the he lost them.

_____          Joseph Zrebiec
Signature          Print Name

The foregoing instrument was sworn to (or affirmed) and subscribed before me this _____ day of
_____, 20 ____, by _____ who is personally
known _____ or who has produced identification. Type of ID Produced: _____

Seal:

_____
Notary Public/Law Enforcement Officer Signature

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Sworn Statement Acknowledgment

**STATEMENT**          08-287396

I, _Joseph Zrehak_ _____ on the _16_ day of _May_ ,
20_08_ A.D., at (time) _8⁵⁰_ at Tampa, Hillsborough County, Florida, freely and voluntarily make
the following statement. I have been advised that I have the constitutional right to remain absolutely
silent, that I need not make any statement that may tend to incriminate me, and if I do that it may be used
in a court of law against me. I have been advised that I have the right to a lawyer and the right to have the
lawyer present before and during any questioning. I have also been told that if I cannot afford a lawyer,
then one will be appointed without cost to represent me. No force has been used nor promises or threats
made in obtaining this statement.

On Thursday the 9 of May of 08
When I started to question him.
He could not remember when and
where he lost them. On more questioning
he started telling me he sold the
dia. for under valued and when
I asked for a Rolex watch he had
he said he sold it. It was a watch for
given to him. Also other people I
introduced him to, he took their property
dia. and sold it. Not giving them all the
money. He told me who and at — also he would sell
dias. and I would pay him — his profit and
he would give me the money back as deposit
for another dia. My total lost is in the
amount of $290,000.00

_Signature_                    _Joseph Zrehak_
                               Print Name

The foregoing instrument was sworn to (or affirmed) and subscribed before me this _16_ day of
_May_ , 20 _08_ , by _____ who is personally
known _____ or who has produced identification. Type of ID Produced: _____

Seal:
                               _____
                               Notary Public/Law Enforcement Officer Signature

Scanned Image - Type : Sworn Statement Acknowledgment

08-287396

In december of 07 my financial life began to fall apart. I had a double Christmas season. And bills were due. I took a diamond Joseph had given me to sell and sold it to a dealer at below what it had cost, that was a 4.04.

We had been selling diamonds for several months and making profit. So I thought I would be able to make it up in future sales. That never happened.

There were people who had given me money to buy things and sell them out, do a profit split. They were asking for their money back and I didn't have it. I paniced and started selling the diamonds for less to cover the debts. My logical side said it was wrong but I still did it. The pressure was unbearable with the phone ringing off the hook. I caused um and ruined many peoples lives.

For: P32846  Monday June 30, 2008                                    Page: 5 of 23

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : **Sworn Statement Acknowledgment**

08-287396

I never told joe what happened till it was too late. My back was against the wall I was ashamed, embarased and listed what I had done to inocent people.

I wrote this letter for Detective Joe to understand my frame of mind at the time.

404 - WAS sold to Bellair Coin
583 WAS sold to Patty Kampsen

5-11-08

08-287396

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)    9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Checks, Contracts, Receipts, etc.
Desc : ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS

08-287.396

Mr payment was made to me.

ROYAL INDIA USA, INC.

10 West 46th Street, 7th Floor
New York, NY 10036

Phone: (212) 616-7651 • Fax: (212) 616-7666
Toll Free: 1-800-838-GEMS • www.royalindiausa.com

Memo No. 25893

Date: 3/3/0?

Terms:

TO: _____ Bangaraj Pujara

Attn: _____ Teejay 16    Tel. No. _____

| # | ITEM NO. | MODEL NO. | DESCRIPTION | # OF PCS | WT. | LOT | PRICE SELECTION | QTY RTN | QTY RCPT | AMOUNT | REM | INVOICE # |
|---|----------|-----------|-------------|----------|-----|-----|-----------------|---------|----------|--------|-----|-----------|
| 1 | | | On F/G | 1 | 3.91ct | $3,000 | | | | 10,990 | | |
| 2 | | | D. H/G | 1 | 2.0ct | $7,900 | | | | 8,9700 | | |
| 3 | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | |
| 5 | | | Oval solitaire | | | | | | | 100 | | |
| 6 | | | Oval solitaire | | | | | | | 8,9900 | | |
| 7 | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | |
| | | | | | | | | | TOTAL | | | |

1. Our liability is limited to the price of our product.
2. Unless otherwise stated, all color stones have probably been subjected to a stable and possibly undetectable color enhancement process. Prevailing market values are based on the universally practiced and accepted process by the gem and jewelry trade.

**MEMO: MERCHANDISE MUST BE REPORTED ON WITHIN ONE WEEK.**

The merchandise described below is delivered to you on memorandum at your risk from all hazards, regardless of the cause of the loss or damage, only for examination and inspection by prospective purchasers, upon the express condition that all such merchandise shall remain the property of ROYAL INDIA USA, INC. and shall be returned on demand, in full its the original form. Until the merchandise is returned and actually received by us, you are fully responsible therefor, and, in the event of damage or loss, whether caused by you or by another, whether or not under your control, you will indemnify us immediately by payment of the stated value which represents the extent of the actual loss and is not intended to constitute a price for the sale of the merchandise, you acquire no right or authority to sell, pledge, hypothecate or otherwise dispose of the merchandise, or any part thereof, by memorandum or otherwise, it being expressly understood that regardless of other transactions or prior trade customs, no credit is extended with respect to this merchandise. A sale of all or any portion of the merchandise shall not affect the terms hereof with respect to the balance hereof. Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract between us with respect to the merchandise herein described and which cannot be varied by oral statements, dealings with respect to other merchandise or any contrary custom of the trade. Any controversy or claim arising out of or relating to this memorandum, or the breach thereof shall be settled by arbitration in New York City, NY in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having Jurisdiction thereof.

## TAMPA PD
## GENERAL OFFENSE HARDCOPY

GO 2008-287396 (ADMINISTRATI)          9500 – 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Checks, Contracts, Receipts, etc.
Desc : ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS

08-287396

**MEMORANDUM**

Consignor:

A-ONE GEMS

62 West 47th Street, Suite #903
New York, N.Y. 10036
Tel : (212) 391-2474
Fax: (212) 391-2478
Toll Free (877) A ONE GEMS (266-3436)
Website: www.aonegems.com

No. 5381

Date: A 23 2008

Consignee:

To: LIVADA c/o Borgioni

Attn/Mr. BORGIONI Phones: 812-977-9142

SHIP VIA:

TRACKING # PH 7010 5186 3056

SALESPERSON:

1. Unless otherwise specified and stated, all colored diamonds and precious stones may have probably been color enhanced as per universally practiced and accepted procedures by the trade and should be reported within seven days unless otherwise specified.
2. Memo merchandise must be reported within seven days unless otherwise specified.

WE SPECIALIZE IN:- DIAMONDS (ROUNDS & FANCIES) * EMERALDS * RUBIES * SAPPHIRES * CHAMPAGNE & COGNAC DIAMONDS *
FANCY COLORED TREATED DIAMONDS * DIAMOND BEADS & BRIOLETTES * ROSE CUT DIAMONDS * BLACK DIAMONDS *

| LOT | DESCRIPTION | PIECES | WGT CT/GMS | PROC/CARAT | TOTAL WGT/CTS | PER CARAT | TOTAL COST |
|-----|-------------|--------|------------|------------|---------------|-----------|------------|
| DI-635 | 27 pc big big jewel G18 | | 173.01 | | | | 126,000.00 |

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)        9500 – 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Checks, Contracts, Receipts, etc.
    Desc : ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS

HOUSEUF-DIAMOND: THAI

SIGNED ON MEMORANDUM
MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

PAGE 86/11
3476

**HOUSE OF DIAMONDS, INC.**
2 West 46th Street, Suite #1005
New York, NY 10036
Tel: 1-212-844-3461 · 1-212-944-9666
Fax: 1-212-944-9783
Cell: 917-405-6215
E-Mail:houseofdiamonds@verizon.net

DATE: 01-30-08
TO: LIVASA DIAMOND CORP.

PHONE:                    FAX:

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4676 | DIAMOND Ro ISIS | | 1 | 4.12 | 4500 | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | 1854. |
| 4 | | | | | | | | | | |
| 5 | | | | | | | DH VS8 | | | 18540. |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER

*never recived paynet for dia*

290-287396

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)        9500 – 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Checks, Contracts, Receipts, etc.
Desc : ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS

05/14/2008  11:00    2129449163           HOUSEOFDIAMOND: THAI              PAGE  07/11

**HOUSE OF DIAMONDS, INC.**
2 West 46ᵗʰ Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-8441 • 1-212-944-8888
Fax: 1-212-944-8113
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

N° 3383

SIGNED ON MEMORANDUM
MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

DATE: 12-19-07

TO: LINADA NAMDAR CORP.

PHONE:               FAX:

| E. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|--------|---------|-------------|------|------|-------------|-------------------|-------------------------|--------|------|---------|
| 1 | 2169 | DIAMONDS  Rd. F-SI2 | | 1 | 4.04 | 5900 | | | 4.04 | 23826. Recd. |
| 2 | 4879 | —do— | H-SI2 | 1 | 2.00 | 4500 | | | | 9000. |
| 3 | 4879 | —do— | I-VS2 | 1 | 1.51 | 4150 | | | 1.51 | 6266 Recd. |
| 4 | | | | | | | Total US$ | | | 39102. |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER

*never received payment for $2 rd dia*

08-287396

TAMPA PD
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Checks, Contracts, Receipts, etc.
Desc : ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS



05/14/2008  11:08   2129449163           HOUSEOFDIAMOND: THAI         PAGE 08/11
          HOD                                                              3628
                                        CONSIGNED ON MEMORANDUM
                                 MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

**HOUSE OF DIAMONDS, INC.**                      DATE:  04-10-08
2 West 46ᵗʰ Street, Suite #1008         TO:  LIVADA  DIAMOND  CORP.
New York, NY 10036
Tel: 1-212-844-0441 • 1-212-844-8568
Fax: 1-212-844-8463
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net      PHONE:              FAX:

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 5064 | DIAMOND RO | J-SI | 2 | 4.18 | 4380 | | | | 18183. |
| 2 | 1503 | DIAMOND FANCY | J-VS | 2 | 2.10 | 2600 | | | | 5460. |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | Total US$ 23643. | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER

*never recived payment or dios*

08-287396

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)      9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Checks, Contracts, Receipts, etc.
   Desc : ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS



HOUSEUF-DIAMOND: THAI

PAGE 03/11

**HOUSE OF DIAMONDS, INC.**
2 West 46ᵗʰ Street (Suite #1005)
New York, NY 10036
Tel: 1-212-944-9491 • 1-212-944-9868
Fax: 1-212-944-9183
Cell: 917-406-8215
E-Mail:houseokliamonds@verizon.net

3140

SIGNED ON MEMORANDUM
MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

BORGIONI    DATE: 10/01/07
TO C/o J. Charles and company
2512 W Kansas Ave Suite-B
Tampa, FL - 33629
PHONE: 813-244-5892 FAX:

| S. NO. | LOT NO. | DESCRIPTION | PCS. | SIZE | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2512 | Diamond-Round (H-VS2) | | | 1.51 | 5200 | | | | Total us $ |
| 2 | 4273 | Diamonds-Round (H-VS2) | | | 1.60 | 4800 | Payment Rec'd | | 1.60 | 7852.00 |
| 3 | | | | | | | | Total us $ | | 7680.00 |
| 4 | | | | | | | | | | 15,532.00 |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER

*never received payment or dias.*

704 L 8 L - 80

TAMPA PD
GENERAL OFFENSE HARDCOPY

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : **Checks, Contracts, Receipts, etc.**
Desc : **ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS**



**HOUSE OF DIAMONDS, INC.**
2 West 46th Street, Suite #1006
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9858
Fax: 1-212-944-9163
Cell: 917-405-6215
E-Mail: houseofdiamonds@verizon.net

HOUSEOFDIAMOND: THAI
PAGE  04/11

C  SIGNED ON MEMORANDUM     3535
MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

TO: LIVADA DIAMOND Corp.     DATE: 02-26-08

PHONE:                    FAX:

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|--------|---------|-------------|------|------|-------------|-------------------|------------------------|--------|------|---------|
| 1 | 4702 | DIAMOND PEAR J-SI1 | | 1 | 4.41 | 4700 | | | | |
| 2 | 4650 | DIAMOND ROUND J-VVS2 | | 1 | 2.54 | 4950 | | | | 20727. |
| 3 | | | | | | | | | | 12573 |
| 4 | | | | | | | | | | |
| 5 | | | | | | | Total US$ 33300. | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER

Never received payment or diamond.

2008-287396

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)        9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : **Checks, Contracts, Receipts, etc.**
  Desc : **ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS**

HOUSEOFDIAMOND: THAI

PAGE 05/11

#SIGNED ON MEMORANDUM
MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK

**HOUSE OF DIAMONDS, INC.**
2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-8441 • 1-212-944-8888
Fax: 1-212-944-8883
Cell: 917-405-8215
E-Mail:houseofdiamonds@verizon.net

Member
DDC
Diamond
Dealers Club

PAGE 5481

DATE: 1/31/08

TO: LIVADA DIAMOND Corp
    c/o J Charles.

PHONE:                    FAX:

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PGS. | WT. IN CTS. | LOT PRICE PER CT. | SELECTION PRICE PER CT. | RETURN | KEPT | REMARKS |
|--------|---------|-------------|------|------|-------------|-------------------|-------------------------|--------|------|---------|
| 1 | 4579 | Diamond Round G-7I | | 2 | 4.03 | 3000 | | | | Total US $ |
| 2 | 4679 | Diamond Round G-7A | | + | | | | | | 12,090.00 |
| 3 | 4882 | Diamond Round I-SI2 | | 1 | 6.84 | 3900 | | | | 26,346.00 Ret |
| 4 | 4868 | Diamond Round J-VS1 | | 1 | 1.51 | 3400 | | | | 5,134.00 |
| 5 | 4153 | Diamond Round | | 1 | 1.50 | 3500 | | | | 5,250.00 |
| 6 | | | | 2 | 2.01 | 2250 | | | | 4,522.50 |
| 7 | | | | | | | | | Total US $ | 49,344.50 |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER

*never received payment or dia*
*except #2*

80-287396

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Checks, Contracts, Receipts, etc.
    Desc : ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : **Checks, Contracts, Receipts, etc.**
Desc : **ROYAL INDIA/HOUSE OF DIAMONDS RECEIPTS**

08-287396

[Handwritten notes, rotated:]

Afima — 1ct @ 1800

1) Gold + Diamond Center —
   — 787-243-9440
   588 - 1450
   305 - 780
   3.00 7500

727-585-4502
Chris

2) Relian com
   4.0 ct TW
   3.0 ct TW
   2 ct

   201
   4/2

   2.54
   1.57
   1.50
   3.70

   Relian 2 - 1500

Role B  727-787-1313

WATCH Rhonda Bordelon
(Sold to Demid Marsh)
Hudson Goldsmith $2800-7

{ Mercedes 7
  Nations Bank

5/9/08 Jennings + Sold these
       diamonds to the online
       people.

       ToldHim

       585
       401

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Scanned Image - Type : Sworn Statement Acknowledgment

08-287396

In December of 07 my financial
life began to fall apart. I had
a double Christmas season and bills
were due. I took a diamond Joseph
had given me to sell and sold
it to a dealer out below what it
had cost, that was a 4.04.

We had been selling diamonds
for several months and making
profit so I thought I would be
able to make it up in future sales.
That never happened.

There were people who had given me
money to buy things and sell them out
do a profit split. They were asking for
their money back and I didn't have
it. I panicked and started selling the
diamonds for less to cover the debts.
My logical side said it was wrong but
I still did it. The pressure was unbearable
with the phone ringing off the hook. I
caved in and ruined many peoples lives.

For: P32846  Monday June 30, 2008                              Page: 17 of 23

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Related Person(s)

**COMPLAINANT #1: ZRELAK, JOSEPH MICHAEL**
**(Master Name Information)**

Sex : **MALE**
Race : **WHITE**
Date of birth : **Nov-26-1959**
Address : **2223 GRANT ST , TAMPA , Florida 33605-**
Phone Numbers: Home : (813)244-5892 Home : (813)839-1299
Business : (813)874-1151 Business : (813)244-5892

Occupation : **DIAMOND BROKER**
Employer : **SELF EMPLOYED  4215 ORIENT ST**
Additional remarks :
      **EMER 813-505-6888 / GIRLFRIEND RHONDA BARTOLACCI**

Linkage factors
Resident status : City (Tampa)

---

**SUBJECT #1: CHRISSAFIS, JAN CHARLES**
**(Case Specific Information)**

Sex : **MALE**
Race : **WHITE**
Date of birth : **Mar-20-1950**
Address : **2522B W KANSAS AVE , TAMPA , Florida 33629-**
Phone Numbers: Home : **(813)765-5931**
Employer : **J CHARLES CUSTOM JEWELERS  3601 W SWANN AVE STE 108**

Master Name Index Reference
**SUBJECT #1: CHRISSAFIS, JAN CHARLES**
Sex : **MALE**
Race : **WHITE**
Date of birth : **Mar-20-1950**

Linkage factors
Resident status : City (Tampa)

---

## TAMPA PD
## GENERAL OFFENSE HARDCOPY

GO 2008-287396 (ADMINISTRATI)        9500 - 81 INFORMATION-ECONOMIC CRIME INV

Related text page(s)

Document: **CASE SUMMARY**
    Author: **45618 - CLARK, DIANE L**
Related date/time: **May-16-2008 1851**
The subject intentionally and consistently engaged in a course of conduct
to mislead the complainant regarding payment for diamonds supplied by the
complainant to the subject for his business.

Document: **INITIAL REPORT**
    Author: **45618 - CLARK, DIANE L**
Related date/time: **May-16-2008 1851**
error

Document: **INITIAL REPORT**
    Author: **45618 - CLARK, DIANE L**
Related date/time: **May-19-2008 1950**
The complainant responded to the D1 office to file the report.

The complainant provided a sworn Statement and several documents.

The documents will be imaged into the report and then forwarded to Records.

Document: **STATEMENT**
    Author: **45618 - CLARK, DIANE L**
    Subject: **ZRELAK, JOSEPH**
Related date/time: **May-16-2008 1851**
Joseph Zrelak stated the following:

Zrelak is a diamond broker; his business name is Livada Diamond Corp.
Zrelak is the "middle man" and arranges for the sale of diamonds from
suppliers to retailers. On occasion he is sent diamonds directly to sell
and other times he arranges for the diamonds to go directly to the
retailers. He is financially responsible for the diamonds either way.

In August 2007 Zrelak began brokering diamonds to Jan Chrissafis owner of
J.Charles Jewelers in Tampa.  Chrissafis's checks for the diamonds were no
good and returned by the bank. He made false promises of payment to Zrelak.
Often Chrissafis paid Zrelak for some of the diamonds on the invoices and
kept the other diamonds, not paying for them or returning them.  Other
times Chrissafis requested diamonds and after Zrelak sent the diamonds
Chrissafis did not pay him at all or return any of the diamonds.

Zrelak owes his diamond suppliers approximately $250,000.(two hundred and
fifty thousand dollars) because Chrissafis has failed to pay him for
numerous diamonds or return the diamonds.

TAMPA PD
GENERAL OFFENSE HARDCOPY

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

Chrissafis admitted to Zrelak in writing that he depended on profit made in
his diamond business to pay Zrelak back but the sales  "never happened".

Document: **INVEST REPORT**
   Author: 27835 - DURKIN, KEVIN J
  Subject: **Investigative Report**
 Related date/time: Jun-20-2008 1530
Investigative Report

After reviewing the report I made telephone contact with Joseph Zrelak, the
reporting party. The interview took place on 5/21/08, 1400 hrs.

Mr. Zrelak added the following to the sworn statement provided to
originating officers. He and Jan had been engaged in selling diamonds
together since August 2007. Mr. Zrelak would obtain the diamonds from
establishments in New York, on "memo". He explained that they provided the
diamonds to him, and he arranged to have them sold in Florida. After they
were sold, Mr. Zrelak in turn paid the N.Y. establishments in a retroactive
fashion.
He employed Chrissafis in August and Chrissafis sold the diamonds readily
during that time. Chrissafis sold the diamonds that had been provided to
him by Mr. Zrelak, in the same "on memo" process as described above. He had
been taking orders and selling the diamonds for a price and then afterward
paid Mr. Zrelak the agreed upon amounts for the stones.
After a few months, Chrissafis started asking for more diamonds, and some
of the checks he had written to Zrelak bounced. Mr. Zrelak informed him of
this and he (Chrissafis) covered the checks and paid them. Around December
of 2007, he started having serious trouble, and continued to ask for more
diamonds.
Mr. Zrelak had given him two diamonds specifically, and they were 5.83 and
4.04 karats each. After they had not been sold, he asked Chrissafis for the
diamonds to be returned. Zrelak had also paid $10,000.00 at the same
approximate time to Chrissafis, which was his profit for previous sales.
After being stalled by Chrissafis, Zrelak had been told that he
(Chrissafis) had purchasers for the two specific diamonds. He offered
Zrelak $10,000.00 deposits, $5,000.00 for each diamond, saying now that he
had purchasers. Mr. Zrelak accepted the deposits.
Mr. Zrelak stated that Chrissafis only returned the commission that he had
earned, and stated that the same money was now deposits on the two
diamonds.
Mr. Zrelak states that he is now owed approximately $250,000.00 from
Chrissafis due to him not paying back for the diamonds that he had been
fronted. He further estimated that he had sold numerous diamonds for under
their value. He provided two dealers that purchased the diamonds from
Chrissafis.
He also had given a watch to have repaired and that had been allegedly sold
as well.

Document: **INVEST REPORT**

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)        9500 - 81 INFORMATION-ECONOMIC CRIME INV

```
    Author: 27835 - DURKIN, KEVIN J
    Subject: Investigative Report
Related date/time: Jun-20-2008 1559
Investigative Report
```

After interviewing the complainant I determined that had given the diamonds
to the suspect up front, and accepted payment afterward, when the diamonds
had been sold. The suspect wrote a statement out for the victim, where he
said that he hoped to cover his debts with future sales. That practice is
consistent with the arrangement they had when the sales had been
consistent. The complainant accepted partial payment for the two described
diamonds after telling Chrissafis to return them. The complainant does
state that Chrissafis lied to him about having deposits, instead returning
ten thousand dollars in commission to Mr. Zrelak.

As the complainant had given the diamonds up front to Chrissafis, and had
taken retroactive payment after the sales, it was explained to the
complainant on 5/21/08 that the case appears to be civil in nature rather
than criminal. I continued to intestigate.

5/21/08 1445 hrs: I contacted Jan Arbutine, President of Bel Air Coin. They
are located at 1350 W. Bay Drive in Largo, and the telephone is
727-585-4502.

Mr. Arbutine said that he is familiar with Jan Chrissafis. He did buy
several diamonds from him. He described him as a well established diamond
trader, with a good reputation. He believes that he purchased about 12
diamonds from him during that time, with the last transaction being
4/11/08. I asked him if Chrissafis sold any diamonds at prices so low they
would have been too good to be true. He responded by saying that Chrissafis
was a tough negotiator. Chrissafis did not sell him all the diamonds he
had, as they couldn't agree on prices for some of them.

On 6/5/08 I made telephone contact with Jan Chrissafis. I learned that he
had retained Mike Maddox as his attorney. I contacted Mr. Maddox and told
him that I wished to interview Chrissafis. He said that he would confer
with his client and call me back.

6/12/08 1405: Mr. Maddox called and left a voice message, indicating that
Chrissafis would not be making a statement.

6/19/08 1245 hrs: I discussed the case with Wayne Chalu of the Hillsborough
County State Attorney's Office. He is the Chief of the Economic Crimes
Division. After reviewing the circumstances of the case with me, Mr. Chalu
advised that the state would not be able to prosecute Jan Chrissafis
criminally.

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)        9500 - 81 INFORMATION-ECONOMIC CRIME INV

**Follow Up Report(s)**

**Follow Up # 1**
Assignment Information
    Assigned to **27835 - DURKIN, KEVIN J**   Rank : **Detective**
    Org unit : **Economic Crimes**
    Capacity : **Investigate/Case Manager**
    Assigned on **May-21-2008 (Wed.) 0657**  by **36522 - BODAMER, REBECCA**
    Report due on **Jul-05-2008 (Sat.)**

Submission Information
    Submitted on **Jun-20-2008 (Fri.) 1641**
    Checked by : **36522 - BODAMER, REBECCA**
    Approved on **Jun-24-2008 (Tue.) by 36522 - BODAMER, REBECCA**
    Follow Up completed : **YES**

**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**

GO 2008-287396 (ADMINISTRATI)          9500 - 81 INFORMATION-ECONOMIC CRIME INV

**Clearance Information**

   General Information
     Agency : TPD
     Cleared status : Not Applicable
     Cleared on **Jun-20-2008 (Fri.)** by 27835 - DURKIN, KEVIN J
     Org unit SQ550 - **Economic Crimes**
     Approved by 36522 - BODAMER, REBECCA
     Org unit SQ550 - **Economic Crimes**
     Complainant/Victim notified : NO

**Related text page(s)**

   Document: CONCLUDING REMARKS
    Author: 27835 - DURKIN, KEVIN J
    Subject: Case administratively cleared
  Related date/time: Jun-20-2008 1627
This case is administratively cleared

After reviewing the report and conducting an investigation, it was noted
that the complainant and suspect in this case had a work history together.
The complainant had given the suspect diamonds up front, and the suspect in
turn sold the diamonds. Afterward, the suspect paid the complainant for the
diamonds he already had in his possession.
The complainant had taken partial payment for two diamonds and had fronted
numerous other diamonds to the suspect. The suspect wrote a statement to
the complainant, where he indicated that he knew what he had done was
wrong. He also wrote that he had "been selling diamonds for several months
and making profit so I thought I would be able to make it up in future
sales".


        **\*\* END OF HARDCOPY \*\***

**Exhibit F**

# AUGUSTINE & EBERLE LLP

90 Broad Street, 25th Floor
New York, New York 10004

Tel: 212.233.4185
Fax: 212.792.6580

REPLY TO: MARK J. EBERLE
MEBERLE@AUGEB-LAW.COM

May 29, 2008

**VIA FEDERAL EXPRESS**

Mr. Joseph Zrelak
2223 Grand Street
Tampa, Florida 33605

Re:     **House of Diamonds Inc.**

Dear Mr. Zrelak:

This firm is counsel to House of Diamonds, Inc.  We understand that you, in conjunction with Mr. Jan Charles Chrissafis and Borgioni LLC (and entities under their and/or your individual control, including Livada Diamond Corp. and J. Charles Custom Jewelers, collectively, "Mr. Chrissafis and Borgioni"), have unlawfully sold, consigned and/or disposed of our client's diamonds in violation and breach of the specific terms of the consignment memoranda between Mr. Chrissafis and Borgioni and our client.

Specifically, it has come to our attention that you have been directly involved in Mr. Chrissafis and Borgioni's breach of their contractual and fiduciary duties to our client by illegally authorizing Mr. Chrissafis to sell and/or consign the diamonds and by failing and refusing to make payment for and/or return the diamonds associated with the following consignment memoranda:

- Memo No. 3140 dated October 1, 2007, with Round Diamond, H-VS2, 1.51 cts., valued at $7,852.00
- Memo No. 3318 dated December 15, 2007, with Round Diamond, K-SI1, 2.80 cts., valued at $12,740.00
- Memo No. 3362 dated December 12, 2007, with White Round Diamond (2 pieces), 2.38 cts., valued at $5,474.00
- Memo No. 3383 dated December 19, 2007, with Round Diamond, H-SI2, 2.00 cts., valued at $9,000.00
- Memo No. 3476 dated January 30, 2008, with Round Diamond, I-SI3, 4.12 cts., valued at $18,540.00

- Memo No. 3481 dated January 31, 2008, with Round Diamond, G-I1, 4.03 cts., valued at $12,090.00, Round Diamond, I-SI2, 1.51 cts., valued at $5,134.00, Round Diamond, J-VS1, 1.50 cts., valued at $5,250.00, and Round Diamond (2 pieces), 2.01 cts., valued at $4,522.50
- Memo No. 3535 dated February 26, 2008, with Pear Diamond, J-SI1, 4.41 cts., valued at $20,727.00, and Round Diamond, J-VVS2, 2.54 cts., valued at $12,573.00
- Memo No. 3561 dated March 13, 2008, with Round Diamond, J-VS2, 3.60 cts., valued at $19,440.00
- Memo No. 3628 dated April 10, 2008, with Round Diamond (2 pieces), J-SI1, 4.18 cts., valued at $18,183.00 and Diamond Earrings (2 pieces), J-VS1, 2.10 cts., valued at $5,460.00.

You are hereby directed to deliver to our client the above-listed diamonds by properly insured courier or, alternatively, make payment of the outstanding sum of $156,985.50 by cashier's check made payable to "House of Diamonds, Inc.," no later than thirty (30) days from the date of this letter. If our client does not receive the above-listed diamonds or the cashier's check within the stated time period, our client will forthwith exercise all rights and remedies against Mr. Chrissafis and Borgioni, and you, including, but not limited to, the commencement of an action against all such parties for injunctive relief, monetary damages, turnover of assets, pre- and post-judgment interest, attorneys' fees and costs.

You are further directed to preserve all documents, memoranda, invoices and communications (whether in written or electronic form) relative to your dealings with Mr. Chrissafis and Borgioni and/or our client, and to advise all related parties of the existence of this demand and the requirement to comply with a litigation-hold barring the destruction of any such related documents and/or materials, including all electronic data.

By separate letter, House of Diamonds, Inc. has made demand upon Mr. Chrissafis and Borgioni for turnover of the diamonds and/or payment of the outstanding sum and to preserve any related data, documents and/or materials.

If you are represented by counsel, we request that you deliver this letter to your counsel and have your counsel contact us as soon as possible.

House of Diamonds, Inc. reserves all rights and remedies and any elections or enforcement of its rights under the law and in equity. This letter shall in no way limit any of House of Diamonds, Inc.'s rights or remedies, or those of its principals, officers or agents, or constitute a waiver thereof.

I look forward to your timely response.

Very truly yours,

Mark J. Eberle

cc:    Mr. Sanjeev Jain, President

# AUGUSTINE & EBERLE LLP

90 Broad Street, 25th Floor
New York, New York 10004

Tel: 212.233.4185
Fax: 212.792.6580

REPLY TO: MARK J. EBERLE
MEBERLE@AUGEB-LAW.COM

May 29, 2008

**VIA FEDERAL EXPRESS**

Mr. Jan Charles Chrissafis, President
J. Charles Custom Jewelers
3601 W. Swann Avenue, Suite 108
Tampa, Florida 33609
and
2522B W. Kansas Avenue
Tampa, Florida 33629

  Re: **House of Diamonds Inc. – Turnover Demand**

Dear Mr. Chrissafis:

  This firm is counsel to House of Diamonds, Inc. We understand that your company and you, in conjunction with Mr. Joseph Zrelak and Borgioni LLC (and entities under their and/or your individual control, including Livada Diamond Corp., collectively, "Mr. Zrelak and Borgioni"), have unlawfully sold, consigned and/or disposed of our client's diamonds in violation and breach of the specific terms of the consignment memoranda between your company, Borgioni LLC and our client.

  Specifically, it has come to our attention that your company and you have breached your contractual and fiduciary duties to our client by illegally selling and/or disposing of our client's diamonds and by failing and refusing to make payment for and/or return the diamonds associated with the following consignment memoranda:

- Memo No. 3140 dated October 1, 2007, with Round Diamond, H-VS2, 1.51 cts., valued at $7,852.00
- Memo No. 3318 dated December 15, 2007, with Round Diamond, K-SI1, 2.80 cts., valued at $12,740.00
- Memo No. 3362 dated December 12, 2007, with White Round Diamond (2 pieces), 2.38 cts., valued at $5,474.00
- Memo No. 3383 dated December 19, 2007, with Round Diamond, H-SI2, 2.00 cts., valued at $9,000.00

- Memo No. 3476 dated January 30, 2008, with Round Diamond, I-SI3, 4.12 cts., valued at $18,540.00
- Memo No. 3481 dated January 31, 2008, with Round Diamond, G-I1, 4.03 cts., valued at $12,090.00, Round Diamond, I-SI2, 1.51 cts., valued at $5,134.00, Round Diamond, J-VS1, 1.50 cts., valued at $5,250.00, and Round Diamond (2 pieces), 2.01 cts., valued at $4,522.50
- Memo No. 3535 dated February 26, 2008, with Pear Diamond, J-SI1, 4.41 cts., valued at $20,727.00, and Round Diamond, J-VVS2, 2.54 cts., valued at $12,573.00
- Memo No. 3561 dated March 13, 2008, with Round Diamond, J-VS2, 3.60 cts., valued at $19,440.00
- Memo No. 3628 dated April 10, 2008, with Round Diamond (2 pieces), J-SI1, 4.18 cts., valued at $18,183.00 and Diamond Earrings (2 pieces), J-VS1, 2.10 cts., valued at $5,460.00.

Your company and you are hereby directed to deliver to our client the above-listed diamonds by properly insured courier or, alternatively, make payment of the outstanding sum of $156,985.50 by cashier's check made payable to "House of Diamonds, Inc.," no later than thirty (30) days from the date of this letter. If our client does not receive the above-listed diamonds or the cashier's check within the stated time period, our client will forthwith exercise all rights and remedies against Mr. Zrelak and Borgioni, and your company and you, including, but not limited to, the commencement of an action against all such parties for injunctive relief, monetary damages, turnover of assets, pre- and post-judgment interest, attorneys' fees and costs.

Your company and you are further directed to preserve all documents, memoranda, invoices and communications (whether in written or electronic form) relative to your company's/you're your dealings with Mr. Zrelak and Borgioni and/or our client, and to advise all of your company's principals, employees, agents and other related parties of the existence of this demand and the requirement to comply with a litigation-hold barring the destruction of any such related documents and/or materials, including all electronic data.

By separate letter, House of Diamonds, Inc. has made demand upon Mr. Zrelak and Borgioni for turnover of the diamonds and/or payment of the outstanding sum and to preserve any related data, documents and/or materials.

If your company is represented by counsel, we request that you deliver this letter to your counsel and have your counsel contact us as soon as possible.

Mr. Jose Charles Chrisafis, President
J. Charles Custom Jewelers
May 29, 2008
Page 3 of 3

House of Diamonds, Inc. reserves all rights and remedies and any elections or enforcement of its rights under the law and in equity.  This letter shall in no way limit any of House of Diamonds, Inc.'s rights or remedies, or those of its principals, officers or agents, or constitute a waiver thereof.

I look forward to your timely response.

Very truly yours,

Mark J. Eberle

cc:    Mr. Sanjeev Jain, President

# AUGUSTINE & EBERLE LLP

90 Broad Street, 25th Floor
New York, New York 10004

Tel: 212.233.4185
Fax: 212.792.6580

REPLY TO: MARK J. EBERLE
MEBERLE@AUGEB-LAW.COM

May 29, 2008

**VIA FEDERAL EXPRESS**

Ms. Rhonda Bartolacci, President
Borgioni LLC
15603 Cochester Road
Tampa, Florida 33647

      Re:    **House of Diamonds Inc.**

Dear Ms. Bartolacci:

This firm is counsel to House of Diamonds, Inc. We understand that Borgioni LLC, in conjunction with Messrs. Jan Charles Chrissafis and Joseph Zrelak (and entities under their and/or your individual control, including Livada Diamond Corp. and J. Charles Custom Jewelers, collectively, "Messrs. Chrissafis and Zrelak"), has unlawfully sold, consigned and/or disposed of our client's diamonds in violation and breach of the specific terms of the consignment memoranda between your company and our client.

Specifically, it has come to our attention that your company has breached its contractual and fiduciary duties to our client by failing and refusing to make payment for and/or return the diamonds associated with the following consignment memoranda:

- Memo No. 3140 dated October 1, 2007, with Round Diamond, H-VS2, 1.51 cts., valued at $7,852.00
- Memo No. 3318 dated December 15, 2007, with Round Diamond, K-SI1, 2.80 cts., valued at $12,740.00
- Memo No. 3362 dated December 12, 2007, with White Round Diamond (2 pieces), 2.38 cts., valued at $5,474.00
- Memo No. 3383 dated December 19, 2007, with Round Diamond, H-SI2, 2.00 cts., valued at $9,000.00
- Memo No. 3476 dated January 30, 2008, with Round Diamond, I-SI3, 4.12 cts., valued at $18,540.00

- Memo No. 3481 dated January 31, 2008, with Round Diamond, G-I1, 4.03 cts., valued at $12,090.00, Round Diamond, I-SI2, 1.51 cts., valued at $5,134.00, Round Diamond, J-VS1, 1.50 cts., valued at $5,250.00, and Round Diamond (2 pieces), 2.01 cts., valued at $4,522.50
- Memo No. 3535 dated February 26, 2008, with Pear Diamond, J-SI1, 4.41 cts., valued at $20,727.00, and Round Diamond, J-VVS2, 2.54 cts., valued at $12,573.00
- Memo No. 3561 dated March 13, 2008, with Round Diamond, J-VS2, 3.60 cts., valued at $19,440.00
- Memo No. 3628 dated April 10, 2008, with Round Diamond (2 pieces), J-SI1, 4.18 cts., valued at $18,183.00 and Diamond Earrings (2 pieces), J-VS1, 2.10 cts., valued at $5,460.00.

Your company is hereby directed to deliver to our client the above-listed diamonds by properly insured courier or, alternatively, make payment of the outstanding sum of $156,985.50 by cashier's check made payable to "House of Diamonds, Inc.," no later than thirty (30) days from the date of this letter. If our client does not receive the above-listed diamonds or the cashier's check within the stated time period, our client will forthwith exercise all rights and remedies against Messrs. Chrissafis and Zrelak, Borgioni LLC and you, including, but not limited to, the commencement of an action against all such parties for injunctive relief, monetary damages, turnover of assets, pre- and post-judgment interest, attorneys' fees and costs.

Your company is further directed to preserve all documents, memoranda, invoices and communications (whether in written or electronic form) relative to your dealings with Messrs. Chrissafis and Zrelak and/or our client, and to advise all of your company's principals, employees, agents and other related parties, including, but not limited to, Tiffany Bartolacci, of the existence of this demand and the requirement to comply with a litigation-hold barring the destruction of any such related documents and/or materials, including all electronic data.

By separate letter, House of Diamonds, Inc. has made demand upon Messrs. Chrissafis and Zrelak for turnover of the diamonds and/or payment of the outstanding sum and to preserve any related data, documents and/or materials.

If your company is represented by counsel, we request that you deliver this letter to your counsel and have your counsel contact us as soon as possible.

House of Diamonds, Inc. reserves all rights and remedies and any elections or enforcement of its rights under the law and in equity. This letter shall in no way limit any of House of Diamonds, Inc.'s rights or remedies, or those of its principals, officers or agents, or constitute a waiver thereof.

I look forward to your timely response.

Very truly yours,

Mark J. Eberle

cc:   Mr. Sanjeev Jain, President

**Exhibit G**



**HOD**

# HOUSE OF DIAMONDS, INC.

2 West 46th Street, Suite #1008
New York, NY 10036
Tel: 1-212-944-9441 • 1-212-944-9868
Fax: 1-212-944-9163
Cell: 917-405-8215
E-Mail: houseofdiamonds@verizon.net

Member
DDC    Diamond
Diamond    Dealers Club

**UNSIGNED ON MEMORANDUM     No.  3157**

**MEMO MERCHANDISE MUST BE REPORTED WITHIN ONE WEEK**

TO:  Borgioni
     c/o Tiffany Bartolacci
     1325 Arezona Ave, Apt #101, Santa Monica, CA 90404

PHONE: 310-849-9850  FAX:

DATE: 10/04/07

To the addressee: This property is sent to you at your own risk from a fixture and received by you for EXAMINATION AND INSPECTION ONLY and is to be returned on demand. Until this time the property is received by you until it is actually redelivered to and received by HOUSE OF DIAMONDS, INC. at its premises, you bear the risk of loss or damage however caused, and you will be legally liable to us to the extent of stated below for any loss or damage which may occur, whether caused by you or not, and whether caused through your negligence or not. Your acceptance of this property described herein constitutes your agreement to be bound by the terms and conditions of this memorandum, whether signed by you or not. The remains in HOUSE OF DIAMONDS, INC. and before any title can pass, there must be an agreement to sell can take place, the item or items selected by you must first be approved by HOUSE OF DIAMONDS, INC. and a bill of sale rendered for such item or items. NO RIGHT OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE OF THIS PROPERTY regardless of any prior transactions, custom or usage in the trade.

| S. NO. | LOT NO. | DESCRIPTION | SIZE | PCS. | WT. IN CTS. | LOT PRICE PRICE PER CT. | SELECTION PER CT. | RETURN | KEPT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4397 | Diamond - Trillion | | 1 | 0.33 | 980 | | | | Total $ 323.40 |
| 2 | | | | | | | | | | 20.00 |
| 3 | | | | | | | | | Shipping + | |
| 4 | | | | | | | | | Total $ | 343.40 |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |

Received the goods listed and valued above in good condition and correct quantity on the terms and conditions set out.

SIGNATURE OF RECEIVER