USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/25/10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HOUSE OF DIAMONDS,                          :
                                            :
                              Plaintiff,    :        **MEMORANDUM**
                                            :        **OPINION & ORDER**
              - against -                   :
                                            :        **08 Civ. 6760 (RJS) (RLE)**
BORGIONI, LLC, et al.,                      :
                                            :
                              Defendants.   :

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

On July 29, 2008, Plaintiff House of Diamonds, Inc. ("House of Diamonds") filed a

Complaint against Defendants Borgioni LLC, Rhonda A. Bartolacci, Tiffany A. Bartolacci

(collectively, the "Borgioni Defendants"); Livada Diamond Corp. ("Livada"); J. Charles and

Company, Inc. d/b/a J. Charles Custom Jewelers ("J. Charles"); Joseph Zrelak; and Jan Charles

Chrissafis, alleging breach of contract, breach of the covenant of good faith, fraud, account

stated, and conversion. (Compl. ¶¶ 57-90.) By stipulation dated April 16, 2009, House of

Diamonds and the Borgioni Defendants, who both consented to the jurisdiction of the

undersigned pursuant to 28 U.S.C. § 636(c), settled for $38,000, and agreed to dismiss the case

as to the Borgioni Defendants, with prejudice and without costs or fees to either party. (*See* Doc.

Nos. 16, 29.) As such, the Borgioni Defendants are not included in this Opinion. The remaining

Defendants, who did not consent to the jurisdiction of the undersigned (Livada, J. Charles, and

Chrissafis), failed to answer, or otherwise respond to the Complaint. On August 26, 2009,

District Judge Sullivan entered a default judgment against them (Doc. Nos. 30-31), but damages

were not decided at that time[1]. Accordingly, these Defendants are not included in this Opinion. Both Zrelak and House of Diamonds consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. No. 16.) Pending before the Court is House of Diamonds's motion for summary judgment against Zrelak (Doc. No. 38), which is unopposed by Zrelak. For the reasons which follow, the motion is **GRANTED.** The Court orders that House of Diamonds be awarded judgment against Zrelak, jointly and severally with all remaining Defendants, as follows: (1) **$118,985.50**[2] in damages; (2) pre-judgment interest at 9% per annum[3]; and (3) post-judgment interest pursuant to 28 U.S.C. § 1961(a).

## II. BACKGROUND

Zrelak began his relationship with House of Diamonds in July 2007 at a Las Vegas trade show, where he indicated his interest in obtaining diamonds on consignment. (House of Diamonds Statement of Uncontested Facts ("Diamonds' SOF") ¶¶ 3-5.) Zrelak began submitting requests for, and receiving, diamonds from House of Diamonds from July 2007 until May 2008. (*Id.*) For each diamond delivery, House of Diamonds delivered the goods pursuant to a consignment memorandum. (*Id.* ¶ 6.) Beginning in October 2007, Zrelak failed to pay for, or return, the diamonds. (*Id.* ¶ 7.) The total damage to House of Diamonds for the unreturned diamonds is $156,985.50. (*Id.* ¶¶ 8-16.) In May 2008, Zrelak contacted House of Diamonds to inform it that he had delivered the diamonds to Chrissafis (another diamond dealer), who had

---

[1]A separate Report and Recommendation on damages is being entered against these non-consenting Defendants.

[2]House of Diamonds requests $156,985.50 in total damages. The award will be reduced by the Borgioni settlement amount of $38,000. Accordingly, the damages due to House of Diamonds from Zrelak and the defaulting Defendants is $118,985.50.

[3]Pre-judgment interest shall be calculated beginning from January 1, 2008, since that is a "reasonable intermediate date." *See § C - Damages.*

then sold them without paying Zrelak. (*Id.* ¶ 17.) Zrelak filed a police report against Chrissafis

for failure to pay him for the diamonds. (*Id.* ¶ 18.) Chrissafis admitted to the police that he had

sold the diamonds for less than their value because he was having financial difficulties. (House

of Diamonds' Mem. of Law in Support of Summary Judgment ("Diamonds' Mem."), Jain Decl.,

Ex. C.) Zrelak was aware that Chrissafis was having difficulties in making payments to him, yet

he continued to sell to him. (*Id.*; Diamonds' SOF ¶ 18.) Once Zrelak revealed these facts to

House of Diamonds, it began issuing written and verbal demands for the return of the diamonds

or full payment of the amounts due on each consignment memorandum. (Diamonds' SOF ¶ 19.)

Zrelak failed to make the payments to House of Diamonds. (*Id.*) In his Answer, he admits that he

was the primary party dealing with House of Diamonds, and that he received the diamonds from

House of Diamonds. (Zrelak's Answer at 1.) He also admits that Chrissafis sold the diamonds

and failed to pay Zrelak the proper amount. (*Id.* at 2.) He sets forth no defenses or denials.

Additionally, he has chosen to not respond to the instant motion and it remains unopposed.

### III. DISCUSSION

**A. Jurisdiction**

This Court has subject matter jurisdiction over the claims in the instant action pursuant to

28 U.S.C. § 1332. Generally, a district court sitting in diversity has personal jurisdiction over a

defendant who is "subject to the jurisdiction of a court of general jurisdiction in the state where

the district court is located." FED. R. CIV. P. 4(k)(1)(A). To determine whether personal

jurisdiction over Zrelak is proper, the Court uses a two-step analysis. First, the Court must

determine whether New York's long-arm statute, N.Y. C.P.L.R. § 302, confers jurisdiction over

Zrelak to New York State Courts of general jurisdiction. Secondly, the Court must establish

whether the exercise of personal jurisdiction over Zrelak would be permissible under the Due

Process Clause of the United States Constitution. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006 (1996).

### 1. Zrelak Conducts Business Within the Meaning of New York's Long-Arm Statute

#### a. N.Y. C.P.L.R. § 302(a)(1)

New York's long-arm statute grants personal jurisdiction over a non-domiciliary defendant if the defendant "transacts business within the state." N.Y. C.P.L.R. § 302(a)(1). A defendant is found to transact business within the state if it "purposefully avails itself of the privileges of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 834 (N.Y. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604 (N.Y. 1967)). It is not necessary that the defendant be physically present in New York for jurisdiction to be proper. *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007). In fact, courts have found that actions such as telephone, fax, and email communications suffice for jurisdictional purposes, so long as the defendant's activities in the state are purposeful and substantially related to the asserted claims. *Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs.*, 850 N.E.2d 1140 (N.Y. 2006), *cert. denied*, 549 U.S. 1095 (2006). Courts have found that a defendant who purposefully created and maintained a continuous relationship with a New York corporation, even in the absence of any further business contacts with the state, was "transacting business" within the meaning of C.P.L.R. § 302(a)(1). *George Reiner & Co., Inc. v. Schwartz*, 363 N.E.2d 551 (N.Y. 1977). A relationship as brief as nine months may be sufficiently continuous for jurisdictional purposes. *See, e.g., Fischbarg*, 880 N.E.2d at 27-28.

In the instant case, Zrelak purposefully approached House of Diamonds at a jewelry show in Las Vegas, and sought to create a relationship with it, knowing it was a New York

4

corporation. (Diamonds' SOF ¶¶ 3-5.) Over a period of approximately one year, Zrelak maintained continuous communications with House of Diamonds by fax and mail, and regularly requested and received diamonds on consignment. (*Id.*) By agreeing to the terms of the numerous consignment memoranda, Zrelak contracted to receive goods and services in New York, and thereby projected himself onto the New York diamond market and invoked the benefits and protections of New York laws relating to the handling and sale of precious stones and metals. *See Fischbarg*, 880 N.E.2d at 28; *see also Parke-Bernet Galleries, Inc. v. Franklyn*, 256 N.E.2d 506 (N.Y. 1970). There is no indication that Zrelak sought to end his relationship with House of Diamonds, or that he in any way attempted to avoid or limit his contacts with New York. Moreover, the instant action arises directly out of Zrelak's contacts with House of Diamonds. Thus, by purposefully creating a continuous relationship with a New York corporation and by maintaining constant communications with it over the period of approximately one year, Zrelak availed himself of the benefits and privileges of transacting business in New York and is therefore subject to jurisdiction under N.Y. C.P.L.R. § 302(a)(1).

### b. N.Y. C.P.L.R. § 302(a)(3)

In addition to jurisdiction over non-residents who transact business in New York, under limited circumstances, New York's long-arm statute also applies to out-of-state actors who cause an injury in New York. Acts that fall under C.P.L.R. § 302(a)(3) include committing a tortious act (except defamation) outside the state that causes injury to person or property within the state, if the tortfeasor:

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in

5

the state and derives substantial revenue from interstate or international commerce;

N.Y. C.P.L.R. § 302(a)(3). Thus, for jurisdiction to be proper under the statute, the Court must determine that Zrelak has caused injury in New York by committing a tortious act outside of New York, and that he meets the requirements of either subsection (i) or subsection (ii). The Court does not inquire into Zrelak's ultimate liability, but rather only looks at whether House of Diamonds has presented a colorable tort claim under New York law. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002).

Here, House of Diamonds raises a claim of conversion against Zrelak. The elements of conversion as articulated by the New York Court of Appeals are: "(1) plaintiff's possessory right or interest in the property . . . and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) (internal citations omitted). House of Diamonds has alleged that it sent Zrelak numerous diamonds on consignment and that he has failed to return them as requested. Accordingly, House of Diamonds has stated a colorable conversion claim under New York law.

Based on Zrelak's continued relationship and frequent communications with House of Diamonds, he regularly transacted business and engaged in a persistent course of conduct within New York for jurisdictional purposes. Moreover, Zrelak was aware at all times that House of Diamonds was a New York corporation with a principal place of business in New York, and should reasonably have expected that failure to pay for or return the diamonds in question would have consequences in New York. Additionally, Zrelak derived substantial revenue from interstate commerce since he is a Florida domiciliary. (Diamonds' SOF ¶ 2.) Accordingly,

6

Zrelak meets the jurisdictional criteria set out in C.P.L.R. § 302(a)(3) and is therefore subject to personal jurisdiction.

### 2. Due Process Analysis

In determining whether exercising personal jurisdiction over Zrelak comports with federal due process, the court applies the minimum contacts and reasonableness tests. *Metro. Life*, 84 F.3d at 567. In cases where the claim arises directly out of defendants' contacts with the state, jurisdiction is proper if defendants purposefully availed themselves of the privileges of doing business in the state and should reasonably have been able to foresee having to defend a lawsuit there. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.*, 241 F.3d 135, 152 (2d Cir. 2001). In examining relevant facts, the Court does not have to limit its inquiry to those contacts that directly give rise to the instant action, but may also consider ones that relate to it. *Bank Brussels Lambert*, 305 F.3d at 128.

Zrelak's contacts with New York meet the minimum contacts requirement of the Due Process analysis. He willfully sought out House of Diamonds, a New York corporation, and chose to engage in a continuous business relationship with it. He regularly placed orders and maintained fax and email correspondence with House of Diamonds in New York. (Compl. ¶¶ 21-22.) He entered into numerous contracts for services from House of Diamonds, which he received from New York. (Compl. ¶¶ 23-36; Diamonds' SOF ¶¶ 7-16.) Since Zrelak purposefully maintained a substantial and continuous business relationship with House of Diamonds and other New York corporations, as well as regularly solicited and received services in the state, he has purposefully availed himself of the benefits of doing business in New York and should reasonably have foreseen having to defend a lawsuit here. The Court finds that Zrelak meets the minimum contacts threshold of the Due Process jurisdictional analysis.

The second prong of the analysis seeks to determine whether exercising personal jurisdiction over a defendant is reasonable under the particular circumstances of this case. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In performing the analysis, the Court considers five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the several states in furthering substantive social policies." *Metro. Life*, 84 F.3d at 568. Where the court finds that there are sufficient minimum contacts to subject a defendant to personal jurisdiction, it is the defendant's burden to demonstrate that jurisdiction would be unreasonable under the particular facts of the case. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Here, Zrelak has not met the burden of demonstrating that exercising personal jurisdiction would be unreasonable. Zrelak found it sufficiently convenient to maintain a business relationship with House of Diamonds in New York and there have been no facts submitted that indicate that it would be particularly burdensome for Zrelak to appear in New York. Although it would doubtlessly be more convenient for him to litigate in Florida rather than New York, such an argument is not dispositive as "the conveniences of modern communication" make having to travel across state lines only a slight burden, insufficient to divest a court of personal jurisdiction. *See United States v. Harrell*, 268 F.3d 141,146 (2d Cir. 2001). In sum, since Zrelak has sufficient minimum contacts with New York and exercising personal jurisdiction over him would not be so burdensome as to be unreasonable. Exercising personal jurisdiction over him comports with the Due Process clause of the United States Constitution.

8

**B. Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Under this standard, summary judgment is proper if "viewing the record in the light most favorable to the nonmoving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." *Pension Benefit Guar. Corp. v. LTV Corp.*, 875 F.2d 1008, 1015 (2d Cir. 1989) (internal quotations omitted), *rev'd on other grounds*, 496 U.S. 633 (1990). In making this determination, the court does not resolve disputed factual issues, but reaches a conclusion as to whether there exists "a genuine and material issue for trial." *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1175 (2d Cir. 1993). An issue of fact is "genuine" if it provides a basis for "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate where no reasonable trier of fact could find in favor of the nonmoving party, *H. L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989), thereby "dispos[ing] of meritless claims before becoming entrenched in a frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987).

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568 (2d Cir. 1993) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). This burden may be met by demonstrating that there is a lack of evidence to support the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the

9

moving party satisfies this initial burden, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. "[T]he mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment." *Quarles v. Gen. Motors Corp.,* 758 F.2d 839, 840 (2d Cir. 1985). If the nonmoving party fails to respond by "affidavits or as otherwise provided in [Rule 56, and] set forth specific facts showing that there is a genuine issue for trial[,] . . . summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e).

### 1. House of Diamonds is Entitled to Summary Judgment

House of Diamonds contends that it is entitled to summary judgment on all of its claims against Zrelak because he has admitted liability. (*See* Diamonds' Mem. at 3-6.) It alleges five claims against Zrelak: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) fraud; (4) account stated; and (5) conversion. (Compl. ¶¶ 57-90.)

### a. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

"Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Friedman, et al. v. General Motors Corp., et al.,* 2010 WL 2540950 at *3 (S.D.N.Y. June 22, 2010) (quoting *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir. 1998) (internal quotations and citations omitted)). If a contract is unambiguous, its interpretation is a question of law and summary judgment is appropriate. *Friedman,* 2010 WL 2540950 at *3 (quoting *Aon Fin. Prods., Inc. v. Societe Generate,* 476 F.3d 90, 95-96 (2d Cir. 2007)). "Under New York law, the implied covenant of good faith and fair dealing inheres in every contract." *Vetromile v. JPI Partners, LLC,* 2010 WL 1529246 at * 10 (S.D.N.Y. Mar. 30, 2010) (citing

*Travellers Int'l A.G. v. Trans World Airline, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994)). "To state a

cause of action for breach of the implied covenant of good faith and fair dealing, the plaintiff

must allege facts which tend to show that the defendant sought to prevent performance of the

contract or to withhold its benefits from the plaintiff." *Dweck Law Firm, L.L.P. v. Mann*, 340 F.

Supp. 2d 353, 358 (S.D.N.Y. May 3, 2004).

      The contract between House of Diamonds and Zrelak was formalized in consignment

memoranda which contained the following terms and conditions:

> The property as listed is delivered to you at your own risk
> from all hazards and received by you for EXAMINATION AND
> INSPECTION ONLY and is to be returned on demand. From the
> time the property is received by you until it is actually re-delivered
> to and received by HOUSE OF DIAMONDS, INC. at its premises,
> you bear the risk of loss or damage however caused, and you will be
> legally liable to us to the extent of the amount stated below for any
> loss or damage which may occur, whether cause[d] by you or not,
> and whether occurring through your negligence or not. Title remains
> in HOUSE OD DIAMONDS, INC. and before any title can pass, or
> before any sale or agreement to sell can take place, the item or items
> selected by you must first be approved by HOUSE OF DIAMONDS,
> INC. and a bill of sale rendered for such item or items. No RIGHT
> OR POWER IS CONVEYED TO YOU TO SELL, PLEDGE,
> HYPOTHECATE OR OTHERWISE DISPOSE OF THIS
> PROPERTY regardless of any prior transactions, customs or usage
> in the trade.

(Compl. ¶ 60) (emphasis in original) The above consignment memorandum is a contract between

the parties, one which Zrelak breached when he refused to return the diamonds after several

demands by House of Diamonds. House of Diamonds fully performed its end of the contract by

timely delivering the diamonds to Zrelak on consignment. It suffered damages of approximately

$156,985.50 from the loss of its diamonds. Accordingly, there was a breach of contract and

Zrelak sets forth no material issue of fact which would give rise to a denial of summary

judgment. Moreover, there is no material factual issue on the implied covenant of good faith and

fair dealing claim. House of Diamonds has shown that Zrelak "sought to withhold benefits" when he refused to return the diamonds, or pay for them. Zrelak has not asserted any facts, defenses, or arguments to contradict the implied covenant claim. Accordingly, because Zrelak refused to pay for or return the diamonds, there is no material factual issue and the Court finds that summary judgment should be awarded to House of Diamonds on both the breach of contract and implied covenant of good faith and fair dealing claims.

### b. Fraud, Account Stated, and Conversion

"Under New York law, the elements of a fraud claim are: (1) a material misrepresentation or omission of fact (2) made by the defendant with knowledge of its falsity; and (3) the intent to defraud ("scienter"); (4) reasonable reliance by the plaintiff; and (5) resulting injury to the plaintiff." *Maersk, Inc., et al., v. Neewra, et al.*, 687 F. Supp. 2d 300, 322 (S.D.N.Y. Dec. 17, 2009) (citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)). An account stated claim may be proved by showing that the parties agreed upon a balance due. *Abovenet Comm., Inc. v. A&D Data Corp.*, 2010 WL 235005 at *4 (Jan. 19, 2010). Such an agreement can be "established by proof that plaintiff billed the defendant a specified amount which the defendant did not protest." *Id.* (citing *LeBoeuf, Lamb, Greene & McRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999); *Anthony M. Barraco, P.C. v. Rosendale*, 162 A.D.2d 899 (N.Y. App. Div. 3d Dep't 1990) (summary judgment properly granted to creditor seeking to recover payment where (1) creditor's letter requesting payment constituted a statement of account; (2) debtor's letter authorizing payment constituted *prima facie* evidence of the debt; and (3) debtor failed to raise a factual issue in response.)) Conversion, under New York law, is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*,

460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co of Am. v. Housing Auth.*, 87

N.Y.2d 36, 44 (1995)). "Two key elements of conversion are (1) plaintiff's possessory right or

interest in the property and (2) defendant's dominion over the property or interference with it, in

derogation of plaintiff's rights. *Edidin v. Uptown Gallery, Inc.*, 2010 WL 1252666 at *2

(S.D.N.Y. Apr. 3, 2010) (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50

(2006)).

      Zrelak appears to have engaged in fraud, a violation of account stated, and conversion.

His actions meet the elements of fraud because he represented to House of Diamonds that he was

holding the diamonds on consignment, which he knew was false since he had sold the diamonds

to Chrissafis without approval. Second, House of Diamonds relied on Zrelak's representation;

and House of Diamonds was injured by Zrelak's misrepresentation. It is unclear whether Zrelak

had an intent to defraud, but his actions imply that he probably did since he sold the diamonds to

Chrissafis knowing that he would not be able to pay for or return the diamonds to House of

Diamonds. Nonetheless, even if Zrelak did not intend to defraud, he does not make any

arguments about any material factual issues concerning fraud, and the facts presented do not

contain material factual issues. As such, House of Diamonds should be awarded summary

judgment for the fraud claim. In similar fashion, House of Diamonds submitted a number of

consignment memoranda which specified an amount for each diamond's worth. The memoranda

clearly and explicitly stated that Zrelak was to either pay for the diamonds or hold them for a

limited time on consignment. As such, the memoranda operated as a "bill" because it contained

an unequivocal price term that was to be paid if the diamonds were not returned. Since Zrelak

did not contest the amount due, or the terms of the memoranda, nor did he raise a material

factual issue concerning the accounts stated claim, House of Diamonds is entitled to summary

judgment on the account stated claim. Finally, Zrelak exercised an ownership right over the diamonds when he sold them to Chrissafis. According to the consignment memoranda, the diamonds were the sole property of House of Diamonds, and Zrelak did not have a right to sell them without approval. He did not seek approval of the sale, and conducted the sales to Chrissafis without permission, and with the knowledge that Chrissafis had written bad checks. The responsibility of payment to House of Diamonds lay solely with Zrelak. Zrelak, for his part, has not rebutted these facts. Instead, he has admitted that he sold the diamonds to Chrissafis. (Jain Decl., Ex. C.) He does not argue that he rightfully sold them, only that he did. As such, there are no material factual issues on the conversion claim, and House of Diamonds is entitled to summary judgment.

## C. Damages

House of Diamonds seeks joint and several contract damages of $118,985.50, together with pre- and post-judgment interest and attorneys' fees and costs. (Compl. ¶ 1.) "As a general rule, 'damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract.'" *Nwagboli v. Teamwork Trans. Corp.*, 2009 WL 4797777, at *3 (S.D.N.Y. December 7, 2009) (citing *Lucente v. IBM Corp.*, 310 F.3d 243, 262 (2d Cir. 2002)). Under New York law, a seller may recover the contract price. *Chaman LAL Setian Exports Ltd. v. Sawhney*, 2003 WL 21649652, at *4 (S.D.N.Y. May 28, 2003). Additionally, under New York law, where the breach of contract was a failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract plus interest. *See Scavenger, Inc. v. GT Interactive Software Corp.*, 734 N.Y.S. 2d 141, 142 (N.Y. App. Div. 2001).

"A plaintiff who prevails on a claim for breach of contract is entitled to prejudgment

14

interest as a matter of right." *Id.* (citing *U.S. Naval Inst. v. Charter Comm., Inc.*, 936 F.2d 692, 698 (2d Cir. 1991)). "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . [and] interest shall be computed from the earliest ascertainable date the cause of action existed . . . ." C.P.L.R. § 5001(a)-(b). "When 'damages were incurred at various times,' interest shall be 'computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.'" *Sawhney*, 2003 WL 21649652, at *4 (citing C.P.L.R. § 5001(b)). "In New York, the statutory rate for prejudgment interest in a breach of contract action is 9% per annum. *Id.* (citing C.P.L.R. § 5004).

"Under generally accepted principles of tort law, the liability of joint tortfeasors is both joint and several." 7 WRIGHT & MILLER § 1623, at 342. A court has discretion to impose joint and several liability when defendants are collaborating or closely related in the commission of a tort. *See S.E.C. v. Becker*, 2010 WL 2165083, at *4 (S.D.N.Y. May 28, 2010) (citing *S.E.C. v. AbsoluteFuture.com*, 393 F.3d 94, 97 (2d Cir. 2004)); *Deutsche Bank Securities, Inc. v. Rhodes*, 578 F. Supp. 2d 652, 671 (S.D.N.Y. Sept. 29, 2008).

House of Diamonds's motion is accompanied by the diamond sales memoranda, and affidavits from its president and counsel supporting its request for damages in the amount of $118,985.50. According to House of Diamonds, Zrelak breached the contract by failing to pay for various diamonds he bought on consignment. The memoranda adequately describe the nature of the damages. Moreover, the affidavits, correspondence by Zrelak, and Zrelak's police report establish his liability. Additionally, each sales memorandum itemized the diamonds by type and price, and specified the dates of the sales. (Jain Decl., Exs. A-C.) The evidence is sufficient to "ascertain the amount of damages owed with reasonable certainty," and an award of $156,985.50 to House of Diamonds will place it in the same economic position that it held prior to Zrelak's

15

breach.

Pre-judgment interest shall be calculated beginning on January 1, 2008. The earliest ascertainable date for a breach of contract would be October 1, 2007, the date on which Zrelak first failed to pay for the consignment diamonds from House of Diamonds. (*See* Compl. ¶ 27, Ex. C.) Zrelak continued to purchase diamonds until April 10, 2008. As such, this Court finds it is best to ascertain a "reasonable intermediate date" because the damages were incurred at various times. An intermediate date between October 1, 2007, and April 10, 2008, is January 1, 2008. Accordingly, that is when the pre-judgment calculation should begin.

Moreover, joint and several liability exists between Zrelak and the non-settling Defendants because all parties are joint tortfeasors by virtue of their actions toward House of Diamonds. (*See House of Diamonds, Inc. v. Borgioni LLC*, No. 08 Civ. 6760 (RJS)(RLE), 2009 WL 2633144 (S.D.N.Y. Aug. 26, 2009) (describing Defendants' relationships). Specifically, Zrelak owns and operates Livada Diamond Corp., and J. Charles is a diamond dealer that served as the principal sales agent for Livada. Chrissafis is one of the principals of J. Charles. As such, Zrelak and the non-settling Defendants Livada, J. Charles, and Chrissafis, are jointly and severally liable because they were closely related during the commission of the torts.

### IV. CONCLUSION

In conclusion, House of Diamonds' motion for summary judgment (Doc. No. 38) is **GRANTED**, and the Court orders that House of Diamonds be awarded (1) **$118,95.50** in damages; (2) pre-judgment interest at 9% per annum; and (3) post-judgment interest pursuant to 28 U.S.C. § 1961(a). The judgment is against Defendants Zrelak, Livada, J. Charles, and Chrissafis, jointly and severally. The Clerk of Court is hereby ordered to close this case and remove this action from the docket without prejudice to House of Diamonds's ability to enforce

this judgment.

**SO ORDERED this 25th day of August 2010**
**New York, New York**

*Ronald Ellis*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Opinion and Order were sent to:**

<u>Counsel for Plaintiff</u>
Mark J. Eberle
Augustine & Eberle LLP
90 Broad Street, 25th Floor
New York, NY 10004

<u>*Pro se* Defendant</u>
Joseph Zrelak
2223 Grant Street
Tampa, FL 33605

<u>Defaulting Defendants</u>
Livada Diamond Corp.
2223 Grant Street
Tampa, Florida 33605-6408
-and-
c/o Rhonda A. Bartolacci, Registered Agent
15603 Cochester Road
Tampa, Florida 33647

J.Charles and Company, Inc.
d/b/a J.Charles Custom Jewelers
2522 West Kansas Avenue, Unit B
Tampa, Florida 33629
-and-
c/o A1A Registered Agent, Inc.
5647 110th Avenue North
Royal Palm Beach, FL 33411

Jan Charles Chrissafis
2522 West Kansas Avenue, Unit B
Tampa, Florida 33629